**Mark Alan CRABTREE, Appellant**

v.

**The STATE of Texas.**

**No. PD–0645–11.**

Court of Criminal Appeals of Texas.

Oct. 31, 2012.

Rehearing Denied Jan. 16, 2013.

Dissenting Opinion on Motion for Rehearing Jan. 16, 2013.

15. *See* n. 4, *supra.*

Austin Reeve Jackson, Tyler, for appellant.

Michael J. West, Asst. District Atty., Lisa C. McMinn, State's Attorney, for the State.

### OPINION

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., MEYERS, PRICE, WOMACK, and HERVEY, JJ., joined.

A jury found Mark Crabtree guilty of the second-degree felony offense of failing to comply with sex offender registration requirements. Crabtree claims that the evidence is legally insufficient to support his conviction because the evidence failed to demonstrate that the Department of Public Safety (DPS) determined his extra-jurisdictional conviction was substantially similar to a Texas offense requiring registration; therefore the State did not prove that he was required to register as a sex offender in Texas. We agree and render a judgment of acquittal.

## I. BACKGROUND

In 1989, Crabtree was convicted of the following Washington offenses: rape of a child in the first degree, child molestation in the first degree, and statutory rape in the first degree. In January 2009, law enforcement officials in Smith County, where Crabtree resided, learned of these prior convictions. Concluding that Crabtree's previous Washington convictions required him to register as a sex offender in Texas and that he failed to do so, law enforcement officers arrested him for failure to comply with registration requirements. The grand jury returned a true bill of indictment which alleged

on or about the 12th day of January, 2009 ... MARK CRABTREE did then and there, while being a person required to register with the local law enforcement authority in the county where the defendant resided or intended to reside for more than seven days, to-wit: Smith County, because of a reportable conviction for Rape of a Child in the First Degree, intentionally or knowingly fail to register with the local law enforcement authority in said county.

Crabtree sought to quash the indictment alleging the indictment's language failed to give him sufficient notice of the charged offense's felony level under Texas Code of Criminal Procedure article 62.102 which defines separate offenses for a state-jail

felony, third-degree felony, and second-degree felony. Crabtree also argued that the State failed to allege that his previous conviction was a reportable conviction as defined in article 62.001(5). The trial court denied his motion.

At trial, the State began its case-in-chief by introducing the judgment and charging instruments documenting Crabtree's Washington convictions for rape of a child in the first degree, child molestation in the first degree, and statutory rape in the first degree, for which he was sentenced to confinement for a term of 89 months, 41 months, and 61 months, respectively. The sponsoring witness, Noel Martin, a crime scene investigator with the Smith County Sheriff's Office who compared Crabtree's fingerprints to the documents, testified that the conduct described in the charging instrument for rape of a child in the first degree would be considered a first-degree felony aggravated sexual assault of a child in Texas.

The State then called Smith County Sheriff's Deputy Jeri Scott to establish Crabtree's registration requirement. Deputy Scott was in charge of the sex offender registration program in Smith County. In that capacity, Deputy Scott registered those required to register as sex offenders, received registrants' verifications, and performed residence and employment checks. She also provided guidance to other law enforcement officers on sex offender registration issues.

In January 2009, Deputy Scott received a call from Whitehouse Police Department Officer Bob Overman inquiring about Crabtree's sex offender status. After receiving the call, Deputy Scott ran Crabtree's criminal history by searching the TCIC/NCIC database. She also searched for Crabtree's name in a local database containing incident reports with suspect, victim, and witness information. There,

she found Crabtree was identified as a witness in a 2008 burglary case which listed his address as being in Whitehouse, located in Smith County. Based on her discovery of Crabtree's conviction for the Washington offense of rape of a child in the first degree, she determined that Crabtree had a duty to register as a sex offender in Texas because, in her opinion, the offense was substantially similar to the Texas offense of aggravated sexual assault of a child. She stated rape of a child in the first degree was substantially similar to the Texas offense of aggravated sexual assault of a child and that child molestation in the first degree was substantially similar to a sexually violent offense, albeit without specifically identifying which sexually violent offense.

By her own admission, Deputy Scott based her substantial-similarity conclusion on the Washington offense's title: rape of a child in the first degree. She stated that she did not know the elements of Washington's rape of a child offense. She also conceded that DPS is ultimately responsible for determining whether an out-of-state conviction is substantially similar to a Texas offense. In fact, Deputy Scott testified that she submitted "paperwork" to DPS and was still waiting to hear back from them at the time of Crabtree's trial. This, according to Deputy Scott, indicated that "[the paperwork's] either fine or it's not been processed." The State did not proffer any evidence at trial or notify the trial judge that DPS determined that Crabtree's Washington conviction was substantially similar to a Texas offense that required registration as either a "reportable conviction or adjudication." The jury found Crabtree guilty of the second-degree felony offense and assessed a punishment of eighteen years' confinement and a $10,000 fine.

Crabtree appealed, arguing that the trial court erred in denying his motion to quash the indictment and that the evidence was insufficient to support his conviction and sentence. As to the sufficiency of the evidence, Crabtree claimed that Code of Criminal Procedure article 62.003 makes a DPS substantial-similarity determination necessary to prove that an individual is required to register due to an extra-jurisdictional conviction. The court of appeals disagreed and held that article 62.003 does not make the requirement to register for an extra-jurisdictional conviction dependent upon a DPS determination and, therefore, it is not an element of failure to comply with registration requirements.[1] The court further found the indictment adequate and the evidence sufficient to support the jury's determination that Crabtree was required to register because the State introduced into evidence the charging documents laying out the elements of Crabtree's prior convictions.[2]

We granted Crabtree's petition for discretionary review to determine whether the court of appeals erred in finding that (1) a DPS determination is not an element of the offense and, as a result, the evidence was legally sufficient, and (2) the indictment was sufficient. In challenging the evidence's sufficiency, Crabtree limits his arguments to the State's alleged failure to prove that he had a "reportable conviction or adjudication" and that he was required to register as a sex offender. So our legal-sufficiency analysis and conclusion address only these arguments. Because we find the evidence insufficient to support Crabtree's conviction, we need not address the indictment's sufficiency.

## II. Legal Sufficiency

 In addressing a challenge to the sufficiency of the evidence, a court must determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3] The essential elements of the crime are determined by state law.[4] "Under Texas state law, we measure the sufficiency of the evidence 'by the elements of the offense as defined by the hypothetically correct jury charge for the case.'"[5] The hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[6]

The court of appeals stated that the hypothetically correct jury charge in this case requires the State's evidence to show that (1) Crabtree was required to register, (2) he failed to comply with that requirement, (3) his duty to register would expire under article 62.101(a), and (4) he was required to verify his registration once every 90 days.[7] We disagree that this completely describes all of the necessary elements of the hypothetically correct jury charge. The court of appeals's conclusion, based on its statutory interpretation, omit-

1. *Crabtree v. State*, No. 12–09–00322–CR, 2011 WL 1204332, at *8 (Tex.App.-Tyler 2011) (not designated for publication).

2. *Id.*

3. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

4. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim.App.2011).

5. *Id.* (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997)).

6. *Id.*

7. *See Crabtree*, 2011 WL 1204332, at *6.

ted an essential element that defines Crabtree's duty to register—that his extra-jurisdictional conviction was a "reportable conviction or adjudication" because DPS determined it was substantially similar to a Texas offense requiring registration.

## A. Interpretation of Chapter 62

 The Legislature defines the elements of an offense as the forbidden conduct, the required culpability, any required result, and the negation of any exception to the offense.[8] When interpreting statutes, "we seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation."[9] We do this by focusing on the statute's literal text in an "attempt to discern the fair, objective meaning of that text at the time of its enactment."[10] And to this end, we presume that (1) "every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible"[11] and (2) the Legislature intended for the entire statutory scheme to be effective.[12] Only if the statute's plain language is ambiguous or would lead to absurd results that the Legislature could not have possibly intended, may a court look beyond the text and consult extra-textual sources.[13]

Texas Code of Criminal Procedure Chapter 62 defines the scope of Texas's sex offender registration program and delineates the legal duties of those who administer it and those subject to its requirements. A person commits the offense of failure to comply with registration requirements if the person (1) is required to register and (2) fails to comply with any requirement of Chapter 62.[14] A person is required to register "with the local law enforcement authority in any municipality where he resides or intends to reside for more than seven days" if he has a "reportable conviction or adjudication."[15]

Article 62.001(5) defines "reportable conviction or adjudication" as a conviction or adjudication for specifically identified Texas sex offenses or offenses containing a sexual component.[16] The definition of "reportable conviction or adjudication" also includes a "violation of the laws of another state, federal law, the laws of a foreign country, or the Uniform Code of Military Justice for or based on the violation of an offense containing elements that are substantially similar to the elements of [an enumerated Texas offense], but not if the violation results in deferred adjudication."[17] And article 62.003, entitled "Determination Regarding Substantially Similar Elements of Offense," states, in relevant part:

(a) For purposes of this chapter, the

---

8. Tex. Penal Code § 1.07(a)(22).

9. *Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim.App.2012) (quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991)).

10. *Id.*

11. *Tapps v. State*, 294 S.W.3d 175, 177 (Tex. Crim.App.2009).

12. *Mahaffey*, 364 S.W.3d at 913; *see* Tex. Gov't Code § 311.021(2).

13. *Id.* (citing *Boykin*, 818 S.W.2d at 785–86).

14. Tex.Code Crim. Proc. art. 62.102(a) (West 2008).

15. *Id.* art. 62.051(a).

16. *See id.* art. 62.001(5) (including, for example, the offenses of continuous sexual abuse, possession or promoting child pornography, burglary of a habitation with the intent to commit an assaultive sexual offense, and a second conviction for the offense of indecent exposure.)

17. Tex.Code Crim. Proc. art. 62.001(5)(H).

department[18] is responsible for determining whether an offense under the laws of another state, federal law, the laws of a foreign country, or the Uniform Code of Military Justice contains elements that are substantially similar to the elements of an offense under the laws of this state.[19]

Article 62.102(b) sets out several distinct offenses ranging from state-jail to second-degree felonies that turn on the nature of a person's registration requirements: (1) whether a person must register for a ten-year period or for life; and (2) if lifetime registration is required, whether the person must verify his or her information with law enforcement yearly or every 90 days.[20]

In rejecting Crabtree's argument that a DPS determination is required to sustain his conviction, the court of appeals reasoned that, had the "legislature wished to define [out-of-state] convictions as the same or substantially similar to certain offenses only if the Department had made such a determination, it would have defined substantially similar offenses in that way."[21] The court of appeals noted that article 62.003 does indeed require DPS to make determinations, but the statute "does not condition statutes being substantially similar on such a determination."[22]

■ We disagree with the court of appeals's interpretation because it undermines the Legislature's readily apparent statutory scheme. Although the Texas sex offender registration program is generally complex, the plain language of articles 62.001 and 62.003 clearly demonstrates the Legislature's intent that whether an extra-jurisdictional conviction or adjudication triggers a person's duty to register is controlled by a DPS determination pursuant to article 62.003. And the language that makes this delegation effective is not ambiguous nor does it compel absurd results the Legislature could not have possibly intended.

Article 62.003's broad introductory phrase, "For purposes of this chapter," indicates the Legislature's intent that article 62.003 applies to the entire Texas sex offender registration program. This naturally includes the definitions found in article 62.001 containing the broad extra-jurisdictional "catch-all" provisions requiring substantial similarity. Through article 62.003, the Legislature delegated the authority to DPS to expand the statutory definition of "reportable conviction or adjudication" by expressly giving it the responsibility to determine whether the elements of extra-jurisdictional convictions or adjudications are substantially similar to Texas offenses the Legislature has specifically listed as requiring registration. In its delegation, the Legislature not only gave DPS the general responsibility to make substantial-similarity determinations, but was specific in defining DPS's continued responsibility in carrying out its mandate. Article 62.003 requires DPS to publish the criteria used in evaluating elements of extra-jurisdictional offenses and to provide records of extra-jurisdictional offenses previously determined to be substantially similar to Texas offenses.[23] Additionally, the

---

18. *Id.* art. 62.001(1) (" 'Department' means the Department of Public Safety.").

19. *Id.* art. 62.003.

20. *Id.* art. 62.102(b); *Juarez v. State,* 198 S.W.3d 790, 793–94 (Tex.Crim.App.2006).

21. *Crabtree,* 2011 WL 1204332, at *7.

22. *Id.*

23. *Id.* art. 62.003(b) ("The department annually shall provide or make available to each prosecuting attorney's office in this state:
 (1) the criteria used in making a determination under Subsection (a); and
 (2) any existing record or compilation of offenses under the laws of another state,

inclusion of a specific appellate remedy from a DPS determination in article 62.003(c) makes plain the legal significance of such a determination. Those who wish to contest DPS's determination that they must register under Chapter 62 may do so in Travis County district court.[24] If the Legislature intended a DPS determination to be merely advisory or legally inoperative, there would be no need to create an appellate remedy from an adverse determination.

The dissent finds ambiguity in articles 62.001(5)(H) and 62.003 as to DPS's role in determining substantial similarity. Assuming such ambiguity exists, article 62.003's legislative history leads us to the same conclusion based on the statutes' plain language: the Legislature intended for DPS to decide whether extra-jurisdictional convictions are reportable convictions or adjudications. As the dissent notes, article 62.003's creation was a direct response to federal litigation.[25] The Legislature was responding to *Creekmore v. Attorney General of Texas*, where Creekmore challenged Texas's sex-offender registration program claiming that the program, among other things, violated his right to due process because "(1) it does not indicate who determines whether an offense under [Uniform Code of Military

Justice] is substantially similar to a listed offense under the Texas Penal Code; (2) it does not provide any process by which an individual determined to have a reportable conviction may challenge that determination; and (3) it does not give clear notice as to when one is deemed convicted two or more times of an offense."[26] According to House Bill 2113's bill analysis, article 62.003 "would make clear who decides whether an offense from another jurisdiction would trigger Texas registration requirements and would allow appeals from these decisions."[27] The bill analysis directly addresses DPS's responsibility and its impact: "DPS would have to determine whether an offense committed under another state's laws, federal law, or the Uniform Code of Military Justice contained elements that were substantially similar to the elements of an offense under Texas laws that would trigger a current law requirement that the person register as a sex offender."[28]

Purportedly relying on H.B. 2113's bill analysis, the dissent concludes a DPS substantial-similarity determination was intended only to apply to DPS in its administrative role or in the "civil-regulatory context." The quoted language in H.B. 2113's bill analysis refutes this interpretation. Also, limiting DPS's responsibility to

federal law, the laws of a foreign country, and the Uniform Code of Military Justice that the department has already determined to contain elements that are substantially similar to the elements of offenses under the laws of this state.").

24. *Id.* art. 62.003(c) ("An appeal of a determination made under this article shall be brought in a district court in Travis County."); *see generally Tex. Dep't Pub. Safety v. Garcia*, 327 S.W.3d 898 (Tex.App.-Austin 2010, pet. denied).

25. *See* House Research Organization, Bill Analysis, Tex. H.B. 2113, 77th Leg., R.S. at 4 (2001) (hereinafter "Bill Analysis"); *see also*

*Public Hearing on S.B. 1648 Before the Sen. Crim. Justice Comm.*, 77th Leg. (statement of Dean Johnson, Police Legal Advisor for the Beaumont Police Department, Mar. 21, 2001) *available at* http://www.senate.state.tx.us/avarchive/?mo=03&yr=2001&lim=0.

26. 116 F.Supp.2d 767, 769–70 (E.D.Tex.2000) (magistrate's opinion on Creekmore's Motion for Preliminary Injunction); *see generally Creekmore v. Attorney General of Texas*, 341 F.Supp.2d 648 (E.D.Tex.2004).

27. Bill Analysis at 4.

28. *Id.* at 3.

make these determinations to its role as the sex-offender registration program's administrator is not dispositive. Even if the dissent is correct in its assessment that a DPS determination was intended solely for the program's administration, this conclusion does not necessarily preclude our holding that DPS is solely responsible for identifying who must comply with Chapter 62 based on extra-jurisdictional convictions. It is clear to us that identifying those subject to the registration requirement and its attendant conditions is the critical element that defines the scope of the sex-offender registration program and DPS's administration of it. The dissent concedes as much when it suggests that the DPS-maintained compilation of offenses already determined to be substantially similar exists "in order to assist law-enforcement agencies in registering sex offenders." [29]

The State notes that we have previously made substantial-similarity determinations as a matter of law without referencing article 62.003,[30] presumably in support of its position that it is preferable to have these substantial-similarity determinations made by the judicial branch, as opposed to "some out-of-court agency." The dissent finds the State's argument and its supporting authority persuasive; we do not. The State acknowledges that our decisions in *Prudholm v. State, Ex parte White,* and

*Ex parte Warren* are distinguishable from the present issue. *Prudholm* and *Ex parte White* considered whether out-of-state convictions used for enhancement purposes were substantially similar under Texas Penal Code § 12.42.[31] While neither of those cases involved sex-offender registration nor article 62.003's interpretation, they do indicate that substantial-similarity issues are matters of law.[32]

*Ex parte Warren* did, however, involve sex-offender registration, but presented its registration issue in a distinguishable posture. Warren contested the imposition of sex-offender registration requirements as a condition of parole as a violation of his due process rights because he was not given prior notice and an opportunity to respond before the conditions were imposed.[33] In holding that the sex-offender registration condition did not violate due process, we relied on the analysis used in *Prudholm*[34] and concluded that, for purposes of Chapter 62, Warren's conviction for the Illinois offense of contributing to the sexual delinquency of a child was substantially similar to the Texas offense of indecency with a child.[35] First, the limited issue confronting the Court in *Ex parte Warren* was whether the imposition of sex-offender registration conditions violated Warren's procedural due process rights as defined by the Fifth Circuit.[36] Second,

---

29. *Post,* at 845.

30. *See Ex parte Warren,* 353 S.W.3d 490, 495–98 (Tex.Crim.App.2011); *Prudholm v. State,* 333 S.W.3d 590 (Tex.Crim.App.2011); *Ex parte White,* 211 S.W.3d 316, 319 (Tex.Crim. App.2007).

31. *Prudholm,* 333 S.W.3d at 592; *Ex parte White,* 211 S.W.3d at 318.

32. *Prudholm,* 333 S.W.3d at 592, 599–600; *Ex parte White,* 211 S.W.3d at 318, 319–20.

33. *Ex parte Warren,* 353 S.W.3d at 491.

34. *Prudholm,* 333 S.W.3d at 592–95 (holding that to find two offenses substantially similar, a review of each offense elements must (1) display a high degree of likeness, but may be less than identical, and (2) be substantially similar with respect to the individual or public interests protected and the impact of the elements on the seriousness of the offenses).

35. *Id.* at 497–98.

36. *Id.* at 492–93 (noting our adoption of the Fifth Circuit's holding in *Meza v. Livingston,* 607 F.3d 392 (5th Cir.2010), that, among other things, a parolee is entitled to written no-

because the question of the propriety of a registration requirement as a condition of parole is so fundamentally distinct from the statutory definition of a criminal offense, *Ex parte Warren* lends little insight to the present issue. While we held that Warren's out-of-state conviction was substantially similar to indecency with a child for purposes of article 62.001(5)(H)—which would statutorily require a parole panel to impose sex-offender registration conditions[37]—our conclusion that Warren's conviction was a reportable conviction or adjudication requiring Warren to register was a more expansive holding than was required to resolve Warren's due process claim. We have upheld sex-offender registration parole conditions on a much lesser finding.[38] Because *Ex parte Warren* addressed a due process claim in the context of parole conditions, was overly broad, and did not contemplate the definition of the offense of failure to comply with registration requirements, we are not persuaded that it has precedential or persuasive value to the present issue.

In addition to *Ex parte Warren*, the dissent claims our opinion in *Ex parte Harbin*[39] supports its position that substantial-similarity determinations are questions of law that can be determined only by the judge presiding over the criminal proceeding. This interpretation of *Ex parte Harbin* is mistaken. In addressing Harbin's claim of actual innocence for failing to comply with registration requirements based on two out-of-state convictions, we held that, due to the various savings clauses found in the legislative amendments to Chapter 62, the convictions alleged in the indictment did not trigger an obligation to register.[40] We also acknowledged that article 62.0101—article 62.003's predecessor—gave DPS the responsibility to make substantial-similarity determinations retroactively. And to illustrate the effect of DPS's retroactive responsibility, we explained its implications on all of Harbin's previous convictions based on a DPS publication, contained in the record, which listed California offenses it determined to be substantially similar to Texas offenses.[41] We held that, under the version of Chapter 62 in effect at the time of the opinion, Harbin would need to register for his 1988 conviction for lewd or lascivious acts—the same offense that we held did not trigger Chapter 62's applicability at the time of the alleged offense—and his 1995 conviction for sexual battery because DPS determined in 2006 that both of these convictions are reportable convictions in Texas.[42] We further stated, "Applicant will not need to register for his 1994 and 1996 convictions for annoying or molesting a child

tice that sex-offender conditions may be imposed as a condition of release and a hearing which allows the parolee to be heard and present evidence; however if the parolee has been convicted of a sex offense, he has received all the process due).

**37.** TEX. GOV'T CODE § 508.186 ("A parole panel shall require as a condition of parole or mandatory supervision that a releasee required to register as a sex offender under Chapter 62, Code of Criminal Procedure: (1) register under that chapter....").

**38.** *See Ex parte Campbell*, 267 S.W.3d 916, 922 (Tex.Crim.App.2008) (concluding that a

parole panel was authorized to impose sex-offender registration requirements based on a single conviction for indecent exposure because a parole panel has broad authority to impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant.)

**39.** 297 S.W.3d 283 (Tex.Crim.App.2009).

**40.** *Id.* at 286–87.

**41.** *Id.* at 287.

**42.** *Id.*

because ... [DPS] does not list California Penal Code § 647.6 as a reportable conviction." [43] The dissent's claim that we viewed the lack of a DPS determination as "persuasive evidence" and "not conclusive evidence of a duty to register" is a plain misreading of the case. *Ex parte Harbin*'s discussion of substantial similarity could arguably be labeled dicta and therefore not binding precedent. Regardless, it certainly does not stand for the proposition that the presiding judge is the only one who can make a substantial-similarity determination. If anything, *Ex parte Harbin* stands for the opposite proposition: a DPS substantial-similarity determination controls whether an individual has a duty to register based on an out-of-state conviction. While our conclusion today is a result of interpreting articles 62.001(5)(H) and 62.003, it is consistent with and now firmly establishes what *Ex parte Harbin* implicitly and necessarily presumed.

Citing to Texas Government Code § 311.021, the State maintains this statutory interpretation would violate the presumption that "a result feasible of execution is intended." The State goes on to assert that, "It is completely unfeasible to expect DPS to be able to maintain a constant vigil upon the criminal law of the entire world for a period of time spanning the conceivable lifetimes of any potential violators of Art. 62.102." [44] The court of appeals expressed similar sentiments in recognizing that the "statute appears to place a very large burden on the Department." [45] The State, like the court of appeals and the dissent, appears to suggest that adhering to article 62.003's plain language creates an insurmountable burden for DPS and as a result is unwise. This position, however, is quite different from suggesting that article 62.003's language leads to absurd results that the Legislature could not have intended. The wisdom of a particular statute is outside this Court's purview. [46]

Relying on statutory construction aids, the dissent takes issue with the consequences of our interpretation which it views as thwarting the objective of Texas's sex-offender registration program. The dissent first claims that our interpretation creates a "loophole" that encourages nonregistration because it removes the burden on offenders to initiate registration and hinders the State's ability to prosecute those with out-of-state sex offenses despite their knowing or intentional failure to register. However, our decision is limited to defining the statutory elements of the failure-to-comply-with-registration-requirements offense viewed through the hypothetically correct jury charge. If, through our restrained approach in interpreting the plain language enacted by the Legislature, we have exposed a weakness in the state's statutory scheme not intended by the Legislature, it has the ability to remedy it. Like our inability to opine on a law's wisdom, we cannot judicially amend

---

43. *Id.*

44. State's Br. on the Merits 13.

45. *Crabtree*, 2011 WL 1204332, at *7 ("But the task would have to be larger than a simple survey of every law in the entire world because neither the laws of this state nor any other are static. And so this duty would seem to entail keeping track of the legislative process in the fifty states, every foreign country, and the U.S. federal system. Finally, because some sex offenders serve lengthy sentences before being released, the Department would be responsible for a survey of previous laws of the fifty states, every foreign country, and the U.S. federal system and military code.").

46. *See generally Montgomery v. State*, 145 Tex. Crim. 606, 170 S.W.2d 750, 753 (1943) ("The courts are not concerned with the wisdom of legislation, this being a matter resting exclusively with the legislature.").

or effectively delete statutory language in the name of interpretation.

The dissent also claims that our interpretation puts individuals' substantive and procedural due process rights at risk "because a defendant could be subjected to criminal liability on the basis of a mere administrative determination." [47] The dissent's due process concerns revolve around a defendant's inability to contest a DPS determination within the criminal prosecution itself and present a complete defense. The dissent's claim that, as a result of our statutory interpretation, a defendant convicted for failing to register would likely have a valid due process claim based on being deprived of the opportunity to defend himself, is questionable. The dissent itself acknowledges that the Supreme Court has held that, to be consistent with constitutional protections, there must be some meaningful review when administrative determinations play a critical role in the subsequent imposition of a criminal sanction. [48] Although the adequacy and the proper implementation of such review are outside the scope of this case, article

62.003's appellate process presumably provides such meaningful review of a DPS determination in that it affords those affected a reasonable opportunity to be heard and present evidence [49] and—according to the dissent—"is frequently used by potential registrants." [50] The federal district court's finding in *Creekmore* supports this view. The court found that newly enacted article 62.003 provided procedural due process because the statute charged a specific agency with the responsibility of making the substantial-similarity determination that used established procedures and a means of appeal from the determination. [51] And courts have generally rejected substantive due process claims based on an obligation to register as a sex offender. [52] Further, it is far from certain that a due process claim based on a deprivation of "a meaningful opportunity to present a complete defense" in this context will have merit. The dissent's broad assertion that our Chapter 62 interpretation potentially infringes upon this right, without more, is unsubstantiated. And the cases it relies upon are unhelpful in this regard. [53]

---

**47.** *Post*, at 844.

**48.** *See, e.g., United States v. Mendoza–Lopez,* 481 U.S. 828, 837–38, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987); *Estep v. United States,* 327 U.S. 114, 121–22, 66 S.Ct. 423, 90 L.Ed. 567 (1946); *Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

**49.** *See Yakus,* 321 U.S. at 433, 64 S.Ct. 660 (holding that the Emergency Price Control Act's judicial review's restriction of an administrative determination to a single court did not violate due process as long as the process affords a reasonable opportunity to be heard and present evidence); *see also Mendoza–Lopez,* 481 U.S. at 838–40, 107 S.Ct. 2148 (holding that a collateral challenge to a prior deportation order is only permitted in a criminal prosecution based on the contested order when the deportation proceeding

effectively eliminates the right of judicial review).

**50.** *See post,* at 841 n. 4 (citing court-of-appeals decisions addressing article 62.003 appeals).

**51.** *Creekmore,* 341 F.Supp.2d at 667; *see generally Meza v. Livingston,* 607 F.3d 392 (5th Cir.2010); *Coleman v. Dretke,* 395 F.3d 216 (5th Cir.2004).

**52.** *See, e.g., Doe v. Moore,* 410 F.3d 1337, 1345 (11th Cir.2005) ("The circuit courts that have considered this substantive due process argument regarding sex offender registries have upheld registration and publication requirements finding no constitutional infirmities."); *Doe v. Tandeske,* 361 F.3d 594, 597 (9th Cir.2004) (per curiam) (holding that persons convicted of serious sex offenses do not have a fundamental right to be free from registration requirements).

Establishing that Crabtree had a reportable conviction or adjudication under the definition of article 62.001(5)(H) is a condition precedent to proving he had a duty to register and failed to comply with that burden.[54] Without proving that Crabtree's conviction satisfied this definition, he could not have committed the charged offense because he would not labor under an obligation to register.[55] Based on the plain language of articles 62.001(5)(H) and 62.003, we hold that a DPS substantial-similarity determination is an essential element of the offense of failure to comply with registration requirements.

Finding that a DPS determination was not an element of the offense, the court of appeals found that the evidence was sufficient to establish substantial similarity between Crabtree's convictions and an enumerated Texas offense without a DPS determination.[56] The court of appeals noted that the State's witness's evaluation of the substantial similarity of Crabtree's Washington convictions based solely on its title was "problematic," but it nonetheless found the evidence sufficient because the State introduced Crabtree's charging documents that contained the elements of his previous convictions.[57]

We address the court's sufficiency conclusion because it is a direct result of its misreading of articles 62.001(5)(H) and 62.003 and inappropriately assigns to the jury the burden of deciding what the law is. The court of appeals would permit the jury to determine whether Crabtree's previous conviction or adjudication was substantially similar to a Texas offense requiring registration. But whether a particular extra-jurisdictional conviction or adjudication is a "reportable conviction or adjudication" under article 62.001(5)(H) is a matter of law.[58] While a jury must find that Crabtree has a reportable conviction or adjudication that requires him to register, it is not the jury's role to determine whether a particular conviction or adjudication legally satisfies article 62.001(5)(H). In a case in which a duty to register is imposed by virtue of an extra-jurisdictional conviction or adjudication, this distinction between issues of fact and law is appropriately addressed by a jury charge that instructs the jury in the abstract and correctly sets out the law of the case.[59] Having concluded that a DPS determination is an essential element of the charged offense, we turn to the evidence the State adduced at trial and whether "any rational trier of fact could

**53.** *See post,* at 845 n. 9 (citing *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (holding that a state procedural rule excluding evidence regarding a confession's voluntariness violated the defendant's meaningful opportunity to present a complete defense) and *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (holding that this principle was not violated when breath-test evidence was not preserved by the State)).

**54.** *Id.* art. 62.102(a); Tex. Penal Code § 6.01(c) ("A person who omits to perform an act does not commit an offense unless a law as defined by Section 1.07 provides that the omission is an offense or otherwise provides that he has a duty to perform the act.").

**55.** *See id.*

**56.** *Crabtree,* 2011 WL 1204332 at *9.

**57.** *Id.*

**58.** *See Prudholm,* 333 S.W.3d at 592, 599–600.

**59.** Tex.Code Crim. Proc. art. 36.13 (stating, "the jury is the exclusive judges of the facts, but is bound to receive the law from the court and be governed thereby."); *see id.* art. 36.14 ("[T]he judge shall ... deliver to the jury ... a written charge distinctly setting forth the law applicable to the case.").

have found the essential elements of the crime beyond a reasonable doubt."

## B. The Evidence is Insufficient

██ The record is silent as to whether DPS previously determined that the Washington offense rape of a child in the first degree was substantially similar to a Texas offense statutorily defined as a "reportable conviction or adjudication." Indeed, in its closing argument and in response to Crabtree's closing remarks, the State expressly advocated that a DPS determination was not required to prove its case and that the jury, on its own, could find that Crabtree's conviction for rape of a child was substantially similar to the offense of aggravated sexual assault in Texas. Instead, the State offered Detective Martin's and Deputy Scott's lay person legal conclusions that the Washington offense was substantially similar to the Texas offense of aggravated sexual assault of a child. In light of our interpretation of the relevant Chapter 62 articles, this is not sufficient. From the guilty verdict it returned, we can assume the jury found Crabtree was previously convicted of rape of a child in the first degree. However, the additional step in the jury's required adjudicatory process—that rape of a child in the first degree is a "reportable conviction or adjudication"—is not supported by the record and its absence leads us to conclude that no rational juror could find that Crabtree had an obligation to register as a sex offender beyond a reasonable doubt.[60] Therefore, we find the evidence insufficient to sustain Crabtree's conviction.

## III. CONCLUSION

Holding that the evidence was legally insufficient to support Crabtree's conviction for the offense of failure to comply with registration requirements, we reverse the judgments of the courts below and enter a judgment of acquittal.

KELLER, P.J., filed a concurring opinion.

HERVEY, J., filed a concurring opinion.

ALCALA, J., filed a dissenting opinion, in which JOHNSON and COCHRAN, JJ., joined.

KELLER, P.J., filed a concurring opinion.

"[L]aws which regulate persons or entities must give fair notice of conduct that is forbidden or required."[1] A person of common intelligence must not have to guess at the meaning of such a law.[2] The dissent's construction of the law in this case would require persons without any legal training to make a legal determination about the similarity of offenses that no government entity or court has ever made. A person should not have to guess about whether or not the law requires him to register as a sex offender.

The *Warren* case cited by the dissent involves a legally distinct situation: the imposition of conditions of parole.[3] For conditions of parole, the defendant is given notice that the condition—the duty to register—is in effect before he is punished for violating the condition.[4]

**60.** *See Jackson,* 443 U.S. at 318, 99 S.Ct. 2781.

**1.** *Federal Communications Commission v. Fox Television Stations,* —— U.S. ——, 132 S.Ct. 2307, 2317, 183 L.Ed.2d 234 (2012).

**2.** *Id.* (citing *Connally v. General Constr. Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926)).

**3.** *Ex parte Warren,* 353 S.W.3d 490 (Tex.Crim. App.2011).

**4.** *See United States v. DiFrancesco,* 449 U.S. 117, 148, 101 S.Ct. 426, 66 L.Ed.2d 328

I think that the dissent also reads too much into the *Whaley* case [5] in saying, in a parenthetical, that "actual notice of duty to register in one jurisdiction is sufficient, for due process purposes, to put sex offender on notice of duty to register with government generally." [6] In *Whaley*, the defendant was on sex-offender registration in Kansas for a conviction in that state.[7] He moved to Texas without notifying authorities in Kansas or Texas.[8] The defendant was then prosecuted under a federal statute that punishes a sex-offender registrant who fails to update his registration after moving to another state.[9] The Fifth Circuit emphasized that the federal law's focus is "on the problem of sex offenders escaping their registration requirements through interstate travel—rather than on requiring sex offender registration generally." [10] The federal law did not deprive the defendant of due process because he "was certainly aware that he was required to register under Kansas law." [11] So the federal statute, as construed by the Fifth Circuit, appears to be based on the defendant's acknowledged status as a sex-offender registrant in the state he moves from rather than his potential status as a sex-offender registrant in the State he moves to.

Moreover, this statute does not apply just to a person whose offense in another jurisdiction required him to register. It applies to any person whose offense is deemed substantially similar to a Texas offense, even if that person is not required to register in the other jurisdiction. Other jurisdictions include not only other states, but also foreign countries, which may or may not have a registration system in place.

The dissent would fault appellant for failing to ascertain on his own that his prior conviction is for a crime that is similar enough to a Texas crime that he is required to register. If that were in fact what the legislative scheme provided, then it would create a serious due process problem by providing that a defendant must guess at what the law requires and face prosecution and incarceration if he guesses incorrectly. The dissent's view would also require prosecutors and police officers to guess what out-of-state offenses qualify for registration—risking a wrongful prosecution if they are incorrect.[12]

With these comments, I join the Court's opinion.

HERVEY, J., filed a concurring opinion.

I join the majority opinion, but I write separately to stress one salient point, one driven home to us, or should be, every day. It is not our job to legislate from the bench. We have a branch of government charged with this responsibility, and the

(1980) (Brennan, J., dissenting) ("since parole and probation by definition are conditional, a defendant is on notice from the outset that a breach of those conditions may result in revocation of beneficial treatment").

**5.** *United States v. Whaley*, 577 F.3d 254 (5th Cir.2009).

**6.** *See* dissent at 843.

**7.** 577 F.3d at 256.

**8.** *Id.*

**9.** *Id.* at 256–57, 259–60.

**10.** *Id.* at 259.

**11.** *Id.* at 262.

**12.** *See Prudholm v. State*, 333 S.W.3d 590 (Tex.Crim.App.2011) (affirming court of appeals's decision to overturn enhancement finding after determining that California offense of "sexual battery does not contain elements that are substantially similar to the elements of aggravated kidnapping or sexual assault").

Legislature has spoken—DPS is the proper authority for regulating whether an extra-jurisdictional conviction or adjudication triggers a person's duty to register. *See* TEX.CODE CRIM. PROC. art. 62.001(1), 62.003.

ALCALA, J., filed a dissenting opinion, in which JOHNSON and COCHRAN, JJ., joined.

I respectfully dissent. Unlike the Court's majority opinion, I conclude the evidence is sufficient and would uphold the court of appeals's judgment affirming the conviction against appellant, Mark Alan Crabtree, for failure to register as a sex offender. *See Crabtree v. State*, No. 12–09–00322–CR, 2011 WL 1204332, at *8–9 (Tex.App.-Tyler Mar. 31, 2011). The majority opinion determines that the failure-to-register offense requires, as one of its elements, evidence that the Texas Department of Public Safety (TDPS) had previously determined that appellant's Washington conviction for first-degree child rape was substantially similar to a Texas offense for which he would have been required to register, and that the record contains no evidence of this. But the applicable criminal provision in Texas Code of Criminal Procedure Chapter 62 does not include a TDPS determination as one of its requirements. *See* TEX.CODE CRIM. PROC. art. 62.102(a); *see also id.* at art. 62.001(5) (defining "reportable conviction or adjudication" without mentioning TDPS). I conclude that the pertinent provisions in Chapter 62 can be reasonably understood to have different meanings. These ambiguous provisions must be examined through extra-textual analysis, which shows that the goal of the sex-offender-registration program is to protect the public from sex offenders through monitoring and public notice, and that a defendant's due-process rights may be infringed if a criminal court judge is precluded from making a matter-of-law determination regarding a criminal element of the failure-to-register offense. The legislative goals and due process concerns underlying these provisions are best met by construing the criminal provision as not including a TDPS determination as a statutory element of the criminal failure-to-register offense.

## I. The Ambiguous Statutes Require Extra–Textual Analysis

The criminal provision and the TDPS provision each appear to have plain meaning at first blush, but when examined together, as required, they are ambiguous.

### A. Applicable Legal Standards

Statutory interpretation is a question of law that we review *de novo. Nguyen v. State*, 359 S.W.3d 636, 641 (Tex.Crim.App. 2012). In interpreting statutes, we seek to effectuate the Legislature's collective intent and presume that the Legislature intended for the entire statutory scheme to be effective, that a just and reasonable result was intended, and that a result feasible of execution is intended. *See* TEX. GOV'T CODE § 311.021; *Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex.Crim.App.2012) (in construing plain language in statute, court may look to other provisions within entire "statutory scheme" rather than merely single, discrete provision at issue) (quoting *Murray v. State*, 302 S.W.3d 874, 879, 881 (Tex.Crim.App.2009)).

To achieve this goal, we necessarily focus our attention on the literal text of the statute and attempt to discern the fair, objective meaning of that text at the time of its enactment. *Nguyen*, 359 S.W.3d at 642. When a statutory term is not defined, we attempt to give effect to its plain meaning or common understanding. *Ramos v. State*, 303 S.W.3d 302, 307 (Tex. Crim.App.2009). If the plain language is unambiguous, our analysis ends because the Legislature must be understood to

mean what it has expressed, and it is not for the courts to add to or subtract from such a statute. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). We give effect to the results of that unambiguous language unless it results in absurd consequences. *Id.* In this context, ambiguity exists when a statute may be understood by reasonably well-informed persons in two or more different senses; conversely, a statute is unambiguous where it reasonably permits only one understanding. *State v. Neesley*, 239 S.W.3d 780, 783 (Tex. Crim.App.2007).

### B. Language in Provisions is Ambiguous When Examined Jointly

#### 1. The Criminal Provision

Code of Criminal Procedure article 62.102(a), which I refer to as the "criminal provision," provides that "[a] person commits an offense if the person is required to register and fails to comply with any requirement of this chapter." TEX.CODE CRIM. PROC. art. 62.102(a). The criminal provision thus applies only to people who are "required to register." *Id.* A person who is "required to register" is one who, among other circumstances, has a "reportable conviction or adjudication." *Id.* at art. 62.051(a) (providing that person who has reportable conviction "shall register . . . with the local law enforcement authority"). The term "reportable conviction or adjudication" is defined in Chapter 62 as follows:

> [It] means a conviction or adjudication, including an adjudication of delinquent conduct or a deferred adjudication, that, regardless of the pendency of an appeal, is a conviction for or an adjudication for or based on:
>
> (A) [penal code violations of continuous sexual abuse of young children, indecency with a child, sexual assault,

aggravated sexual assault, or prohibited sexual conduct];

(B) [compelling prostitution, sexual performance by a child, or possession or promotion of child pornography];

(C) [aggravated kidnapping if the intent was to violate or abuse the victim sexually];

(D) [burglary if, in general, the intent was to violate or abuse the victim sexually];

(E) [unlawful restraint, kidnapping or aggravated kidnapping if, in general, the victim was under 17 years of age];

. . . .

(G) [an attempt to commit the above described offenses or trafficking of persons except for indecent exposure];

(H) a violation of the laws of another state, federal law, the laws of a foreign country, or the Uniform Code of Military Justice for or based on the violation of an offense containing elements that are substantially similar to the elements of an offense listed under Paragraph (A), (B), (C), (D), (E), (G), (J), or (K), but not if the violation results in a deferred adjudication;

(I) [a second violation for indecent exposure; provides "substantially similar" language as in (H) ];

(J) [online solicitation of a minor]; or

(K) [trafficking of persons].

*Id.* at art. 62.001(5).

The Chapter 62 definition of a "reportable conviction" thus extends to an out-of-state conviction only if the underlying offense contains "elements that are substantially similar" to the elements of an offense that would be reportable if committed in Texas. *See id.* at art. 62.001(5)(H). Nothing in the Chapter 62 definitions section identifies TDPS as the sole entity that must make a finding of substantial similarity as described in Subsection (5)(H),

which is the Subsection violated by appellant, nor is a TDPS determination mentioned in Subsections (5)(I) or (6)(E), both of which include the same reference to "substantially similar" elements of an offense. *See id.* at arts. 62.001(5)(H), (5)(I) & (6)(E).

This Court has previously approached the substantial-similarity determination as a question of law for a court to decide when that issue arises in a criminal proceeding. *See Ex parte Warren,* 353 S.W.3d 490, 495–98 (Tex.Crim.App.2011). In *Warren,* this Court was asked to determine whether an out-of-state sex offense was "reportable" for the purposes of Chapter 62, and that same question is at the heart of appellant's sufficiency challenge. *Id.* at 493. This Court determined, pursuant to the Chapter 62 definition of what constitutes a "reportable offense," that certain Illinois sex offenses were "substantially similar" to reportable Texas sex offenses, and, therefore, that Warren was properly subjected to sex-offender parole conditions. *Id.* at 498 (stating that "[b]ased on the foregoing, we conclude that the Illinois offense of Contributing to the Sexual Delinquency of a Child is 'substantially similar' to the Texas offense of Indecency with a Child and constitutes an offense that qualifies a parolee for sex-offender conditions"). This Court determined substantial similarity under Code of Criminal Procedure article 62.001(5)(H), the Chapter 62 provision defining "reportable conviction," without referencing or mentioning the TDPS provision. *See id.* While I acknowledge that

*Warren* arose in the context of a habeas corpus application challenging an alleged deprivation of due process regarding conditions of parole, the procedural dissimilarity of *Warren* cannot reasonably be used as the basis for ignoring this Court's decision permitting a criminal court to make the matter-of-law determination irrespective of a TDPS determination. *See id.*

Appellant mistakenly suggests that this Court's decision in *Ex parte Harbin* establishes that a TDPS determination is an element of the criminal provision. 297 S.W.3d 283 (Tex.Crim.App.2009). But in *Harbin,* it was this Court, not TDPS, that ultimately determined that some of Harbin's out-of-state convictions did not require him to register in Texas. *Id.* at 287–88. The issue in *Harbin* was not whether TDPS had made a determination, but whether one of Harbin's out-of-state offenses was, as determined by this Court, "substantially similar to a Texas offense that would have required [Harbin] to register as a sex offender in Texas." *Id.* at 285. This Court ruled that some of Harbin's out-of-state offenses were not "substantially similar" to reportable Texas sex offenses. *Id.* at 287–88. Although it considered the absence of a TDPS determination to be persuasive evidence, this Court did not hold that a TDPS determination was a required element for a criminal conviction. *Id.* The Court's approach suggests that TDPS determinations were not considered by this Court to be conclusive evidence of a duty to register.[1] *See id.* at 287.

---

1. The Texas courts of appeals that have considered this issue have treated substantial similarity as a matter of law to be determined by the trial court. *See, e.g., Brown v. State,* No. 05–10–00162–CR, 2012 WL 1021444 (Tex.App.-Dallas Mar. 28, 2012, pet. filed) (holding that substantial similarity is question of law for court and that TDPS determination

unnecessary for criminal conviction); *Reid v. State,* No. 01–10–00456–CR, 2011 WL 6306630 (Tex.App.-Houston [1st Dist.] Dec. 15, 2011, no pet.) (overruling defendant's sufficiency challenge in failure-to-register case without considering or mentioning TDPS determination). Other jurisdictions also consider this type of inquiry to be a matter of law.

Until today, no court has interpreted the Chapter 62 criminal provision as requiring proof that a TDPS determination existed at the time of the criminal conduct. I conclude that, in accordance with this Court's approach in *Warren* and *Harbin*, the question of whether two statutes are "substantially similar" is a question of law for a court to determine when that question arises in a criminal proceeding. *See Warren*, 353 S.W.3d at 495–98. The plain language of the criminal provision can be reasonably understood as not requiring proof of a TDPS determination.

## 2. The TDPS Provision

The majority opinion reaches its decision by transplanting a requirement of article 62.003 of the Texas Code of Criminal Procedure, which I refer to as the "TDPS provision," into the criminal provision and applicable definitions sections, which do not include that requirement. *See* TEX. CODE CRIM. PROC. art. 62.003(a). The TDPS provision states, "For the purposes of this chapter, the department is responsible for determining whether an offense under the laws of another state ... contains elements that are substantially similar to the elements of an offense under the laws of this state." *Id.* The majority opinion interprets the TDPS provision as limiting the meaning of "substantially similar" to include only those extra-jurisdictional offenses that TDPS has already determined to be reportable. *Compare id.* at art. 62.001(5)(H), *with id.* at art. 62.003(a). Under this interpretation, the TDPS provision creates the exclusive means by which an extra-jurisdictional sex offender will have a reportable conviction and thus be

required to register. *See id.* at arts. 62.003 and 62.051(a) (describing general registration requirements).

I agree with the majority opinion that the TDPS provision could be reasonably read to apply to the criminal provision because the former provision says it applies "for the purposes of" Chapter 62, which is the chapter under which both statutes appear. *See id.* But the TDPS provision also could be reasonably read as being inapplicable to the criminal provision because the criminal provision does not include an element that requires a TDPS determination. *See id.* at art. 62.102(a). Furthermore, the introduction, "for the purposes of this chapter," pertains to the phrase, "the department is responsible for determining." *See id.* at art. 62.003. By using the word "responsible," the Legislature makes TDPS liable for making a legal determination upon an inquiry from a person or agency. *See* MERRIAM-WEBSTER's COLLEGIATE DICTIONARY 998 (10th ed.1993) (defining "responsible" as "liable to be called on to answer"). This reasonable understanding of the plain words in the TDPS provision would make the department responsible for determining substantial similarity as part of its regulatory function over the sex-offender-registration program, with the burden of making these administrative determinations. Under this interpretation, the TDPS determination would not be an element of the criminal provision because a sex offender from another state could have a "reportable offense" and be required to register, even in the absence of a TDPS ruling. *See* TEX. CODE CRIM. PROC. art. 62.001(5)(H).

*See State v. Prush*, 185 N.C.App. 472, 648 S.E.2d 556, 561 (2007) (determination of whether elements of out-of-state criminal offense were substantially similar to elements of North Carolina criminal offense "does not require the resolution of disputed facts, and

as such, is a matter of law"); *State v. Lloyd*, 132 Ohio St.3d 135, 970 N.E.2d 870, 877 (2012) (whether an out-of-state offense is substantially equivalent to Ohio sex offense requiring registration is matter of law).

Because the criminal provision and the TDPS provision, when read together, can be reasonably understood to have contrary meanings, I conclude that the language in these provisions is ambiguous. I, therefore, disagree with the majority opinion's determination that any conflict can be reconciled without having to turn to extra-textual analysis.[2]

## II. Extra-textual Analysis Reveals TDPS Evidence Not An Element of Offense

Because there are two reasonable meanings that can be derived from the criminal provision, we may consider limited extra-textual factors to discern the meaning that best honors the will of the Legislature. *See Cornet v. State*, 359 S.W.3d 217, 221 (Tex.Crim.App.2012). Relevant factors we may consider include (A) the legislative history and circumstances under which the

statute was enacted; (B) consequences of a particular construction; and (C) the object sought to be attained. *See* TEX. GOV'T CODE § 311.023; *Clinton v. State*, 354 S.W.3d 795, 800 n. 1 (Tex.Crim.App.2011).

### A. Legislative History and Circumstances of Enactment

#### 1. Inception of Registration Program and Criminal Provision

Chapter 62, entitled "Sex Offender Registration Program," aims to establish a comprehensive regulatory scheme governing sex-offender registration. The program, including a provision that imposes criminal penalties for non-registration, was initially enacted over 20 years ago, in 1991. *See* Act of June 15, 1991, 72nd Leg., R.S., ch. 572 § 1 (Tex. S.B. 259), effective Sept. 1, 1991. As originally enacted, the criminal

---

**2.** I completely agree with Judge Hervey's point in her concurring opinion that "[i]t is not our job to legislate from the bench" and that "the Legislature has spoken." This point supports the dissenting opinion. In the statute that specifically criminalizes any failure to comply with the requirements of Chapter 62, the Legislature plainly and expressly describes the elements necessary to establish a criminal offense, and none of these elements requires proof of any determination by TDPS. *See Calton v. State*, 176 S.W.3d 231, 233 (Tex. Crim.App.2005) ("In discerning whether any given fact constitutes an element of an offense, we look to the plain language of the statute involved"). If the Legislature had intended for the TDPS provision to be an element of the criminal offense, it would have specifically included it in the criminal provision or in the applicable Chapter 62 definitions section. *See, e.g., Cornet v. State*, 359 S.W.3d 217, 222 (Tex.Crim.App.2012) (noting that, "when the Legislature desires to convey a certain level of specificity within a statutory provision, it knows how to do it"). Absent a more explicit statement from the Legislature, this Court should not interpret the TDPS provision as an element of the criminal provision.

Rather than apply the plain words that expressly describe the criminal offense, the ma-

jority opinion alters that plain meaning by transplanting a different Chapter 62 provision into the criminal offense. That wholly separate provision, the TDPS provision, was enacted for the purpose of defining TDPS's administrative role. The Legislature's use of the introductory phrase "for the purposes of this chapter" makes the TDPS provision applicable to the nearly fifty articles in Chapter 62 that address administrative matters, such as where and when to register, what information must be collected, public notification requirements, and provisions for juvenile offenders.

The Legislature has expressly instructed courts to consider extra-textual factors when statutory language is ambiguous. *See* TEX. GOV'T CODE § 311.023. Having abided by the Government Code's description of how the Legislature intends for courts to examine statutes, I conclude that a review of the language of the criminal provision and the relevant extra-textual factors makes it abundantly clear that the Legislature never intended for the TDPS provision to alter the elements of the failure-to-register offense. Construing ambiguous language in light of the appropriate extra-textual factors in order to avoid an absurd result does not constitute legislating from the bench.

provision pertained to individuals convicted of sex offenses in Texas only, but it was soon amended to include individuals with out-of-state convictions. *See* TEX.CODE CRIM. PROC. art. 62.001(5)(H) (Chapter 62 definitions provision, defining "reportable conviction" as an out-of-state conviction for sex offense containing elements "substantially similar" to elements of reportable Texas sex offense), added by Act of May 29, 1995, 74th Leg., R.S., Ch. 258, § 1 (Tex. S.B. 267), effective Sept. 1, 1995. Thus, for almost 20 years, sex offenders convicted in other states who subsequently move to Texas have been required to register when their underlying convictions are for sex offenses "substantially similar" to reportable Texas sex offenses. *See* TEX. CODE CRIM. PROC. art. 62.001(5)(H). The Legislature enacted this provision in furtherance of the program's public safety goals to "ensure that offenders do not fall through the cracks and escape registration." *See* House Research Organization, Bill Analysis, Tex. S.B. 267, 74th Leg., R.S. (1995).

### 2. Inception of TDPS Provision

It was not until 2001, seven years after Chapter 62 was amended to require registration by out-of-state sex offenders, that the Legislature enacted the separate TDPS provision. *See* Act of May 3, 2001, 77th Leg., R.S., Ch. 211 § 2 (Tex. S.B. 1380), effective Sept. 1, 2001. The Legislature enacted the TDPS provision in direct response to *Creekmore v. Attorney General of Texas*, a federal civil lawsuit. *See* House Research Organization, Bill Analysis, Tex. H.B. 2113, 77th Leg., R.S. (2001) (noting that provision was enacted to address concerns raised in lawsuit against Beaumont Police Department); *Creekmore v. Attorney General of Texas*, 341 F.Supp.2d 648, 655 (2004) (noting that TDPS provision was enacted "during pen-

dency of this suit—and perhaps in response to it").

Creekmore, a sex offender convicted under military law, was advised by federal officials that, upon being released from federal prison, he would be required to register as a sex offender in any state where he chose to reside. *Id.* at 653–54. Federal officials also advised Beaumont law enforcement, where the prison was located, of Creekmore's impending release. *Id.* Creekmore was released from prison and chose to reside in Beaumont. *Id.* Creekmore was then advised by a Jefferson County sheriff's office employee that the employee had determined that Creekmore must register as a sex offender in Texas. *Id.* at 653. Under protest, Creekmore registered as a sex offender, but filed a lawsuit claiming that Texas' sex-offender-registration program violated his constitutional rights. *Id.* Creekmore challenged Texas' sex-offender-registration program on the basis that it "did not designate an entity for making [substantial-similarity] determinations, nor did it provide process whereby potential registrants could be heard in the matter." *Id.* Importantly, nothing in the *Creekmore* litigation concerned criminal penalties for failure to register or the constitutionality of the criminal provision.

The district court acknowledged that the pre-TDPS provision statutory scheme, which called on law-enforcement officers to make individual registration determinations, had "provided no process whatsoever" before requiring Creekmore to register. *Id.* at 666. The court determined that the pre-TDPS registration procedure was constitutionally inadequate because it called upon an "untrained layman" (each individual law-enforcement officer) to make a difficult legal determination (deciding whether two statutes are substantially

similar), thereby presenting a high "risk of error." *Id.* at 666–67.

In responding to the *Creekmore* litigation, the Legislature made a single administrative body, TDPS, responsible for carrying out registration procedures at that preliminary stage. The provision asks TDPS to determine as an initial matter, element by element, whether a particular sex offense from another jurisdiction would subject an individual to registration under Texas law. *See* TEX.CODE CRIM. PROC. art. 62.003(a).

The TDPS provision appears alongside several other administrative tasks assigned to the department and appears to constitute a delegation of administrative responsibility.[3] The TDPS provision establishes the department's administrative role by requiring TDPS to annually provide or make available to each prosecuting attorney's office the criteria used to make substantial-similarity determinations, and any "existing record or compilation" of offenses that it had "already determined" were substantially similar to Texas offenses. *See* TEX.CODE CRIM. PROC. art. 62.003(b).

The Legislature also enacted a right of appeal. An individual who desires to challenge a TDPS determination that an offense is substantially similar (and thus reportable) may appeal that determination in a lawsuit that "shall be brought in a district court in Travis county."[4] *See id.* at art. 62.003(c). The opportunity to appeal a TDPS determination in district court is not contingent upon the existence of a criminal prosecution for failure to register, and it is unclear how such a civil-appeals process would function during a pending criminal proceeding for failure to register. *See id.* at art. 62.102(a). I conclude that the establishment of a civil-appeals process is indicative of the civil-regulatory nature of the TPDS provision.

Under my reading of the statutory scheme, sex offenders are still entitled to full procedural protections at the initial registration stage; if someone is dissatisfied with a TDPS registration determination, a civil appeal may be brought to resolve that dispute. *See id.* at art. 62.003(c). Nothing in the dissenting opinion diminishes TDPS's role as administrator of the sex-offender program, nor does it affect the right of appeal to civil court. Both remain in full effect.

I conclude that the most reasonable understanding of the legislative history is that the TDPS provision was intended to satisfy procedural due-process concerns by authorizing a single law-enforcement entity to make the administrative determination regarding substantial similarity for out-of-state offenses, and by establishing a right to appeal that determination in a civil district court. *See* TEX.CODE CRIM. PROC. art. 62.003(a)–(c). But the Legislature never intended for that administrative de-

---

**3.** TDPS is the general administrator of the sex-offender program and is responsible for many administrative functions under Chapter 62. For example, TDPS is responsible for determining an individual's primary registration authority; for maintaining a computerized sex-offender database; and for providing sex offender information to other law-enforcement agencies. *See* TEX.CODE CRIM. PROC. arts. 62.004–06.

**4.** This civil-appeals mechanism is frequently used by potential registrants. *See, e.g., Texas Dept. of Public Safety v. Garcia,* 327 S.W.3d 898 (Tex.App.-Austin 2010, pet. denied) (affirming trial court reversal of TDPS substantial-similarity determination in the context of a civil-administrative appeal); *Texas Dept. of Public Safety v. Anonymous Adult Texas Resident,* No. 03–11–00602–CV, 2012 WL 3793249 (Tex.App.-Austin Aug. 30, 2012, no pet.) (affirming trial court's reversal of TDPS substantial-similarity determination upon civil challenge by prospective registrant).

termination to be dispositive in a criminal trial. The Legislature never mentioned TDPS in the plain words describing the criminal provision or in the applicable Chapter 62 definitions section defining a reportable offense. *See* Tex.Code Crim. Proc. arts. 62.001(5)(H) & 62.102(a). And nothing in the legislative history suggests that, by appointing a civil regulatory agency to make administrative determinations, lawmakers intended to dispel criminal courts of their authority to decide whether the elements of a criminal offense have been established as a matter of law.

## B. Consequences from Interpreting that TDPS Exclusively Determines Matter of Law in Criminal Proceeding

To interpret the TDPS provision as an element of the criminal provision would lead to two negative consequences, which are inconsistent with the legislative intent.

### 1. State's Ability to Prosecute Sex Offenders Negatively Impacted

#### a. Offenders Who Knew About Registration Requirements Will Escape Prosecution

The State would be seriously hindered in its ability to prosecute some extra-jurisdictional sex offenders, notwithstanding their knowing or intentional failure to register.[5] Such an interpretation creates a loophole in Texas' sex-offender-registration program that discourages extra-jurisdictional offenders from complying with registration requirements. This result is wholly inconsistent with the Legislative

intent to promote public safety by monitoring sex offenders' movements and notifying the public of sex offenders' whereabouts.

The case at bar perfectly illustrates the conundrum: Appellant was convicted of child rape in Washington, a state with a sex-offender-registration program that would have required him to register.[6] Instead, he moved to Texas and did not register. Although evidence at trial showed that he knew he was supposed to register, appellant now argues that he should not be held criminally liable for his failure to register simply because TDPS had not conducted an administrative process at the time he was apprehended. He makes this argument in spite of the fact that he never gave TDPS any opportunity to make a determination because law enforcement was unaware of his status as a sex offender.

This loophole could not have been intended by the Legislature. The regulations contemplate that individuals will comply with the program's requirements on their own accord or face criminal penalties for failure to comply. *See* Tex.Code Crim. Proc. art. 62.102(a). The Legislature decided to place the primary responsibility for compliance on offenders and not on TDPS or any other law-enforcement agency. *See Martin v. State*, 252 S.W.3d 809, 819 (Tex.App.-Texarkana 2008, pet. dismissed as improvidently granted) (noting that sex-offender-registration program

---

5. The criminal provision is not a strict-liability offense. Because no state of mind is specified, proof that the defendant acted intentionally, knowingly, or recklessly is sufficient. *See* Tex. Penal Code §§ 6.02, 6.03. In Chapter 62 failure-to-register cases, the *mens rea* requirement applies to the actual knowledge of a duty to register. *See Varnes v. State*, 63 S.W.3d 824, 830 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Here, appellant was

found guilty of a knowing or intentional failure to register.

6. *See* Wash. Rev.Code § 9A.44.130 (2011) (requiring registration in that state for anyone convicted of a sex offense, and requiring sex offenders to register in another state upon relocating), enacted by Act of Feb. 28, 1990, Wash. 51st Leg., Ch. 3.

"does not explicitly provide a sex offender any defense for a failure by the State to do any particular act, such as delivering him or her a particular form" and "with few exceptions, the burdens are placed on the offender."); *Varnes v. State,* 63 S.W.3d 824, 830 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (court "decline[d] to hold that a technical violation of the State's duties under the [failure-to-register] statute necessarily nullifies prosecution under the statute, particularly since the statute expressly makes the prospective registrant responsible for verifying the State's actions and liable for his own failure to act under the statute."). The Legislature chose to place the burden to register directly on sex offenders because of the difficulties inherent in tracking individuals who regularly move from one place to the next. In order for sex-offender-registration programs to have any real impact, the burden of reporting must be placed on offenders and not on law enforcement.

The burden to initiate registration extends even to sex offenders convicted in other jurisdictions. That is because federal law in place since 1994 has effectively required sex offenders who move to another state to inform law enforcement in the convicting state and register in the new state within 10 days. *See* Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, Pub.L. No. 103–322, title XVII, Sec. 170101, 108 Stat.2038 (1994) (formerly codified at 42 U.S.C. §§ 14071–73, repealed and superseded by 42 U.S.C. § 16911 *et seq.* (2006)). The Wetterling Act also provided that "[a] person required to register under a State program established pursuant to this section who knowingly fails to so register and keep such registration current shall be subject to criminal penalties in any State in which the person has so failed." *See* former 42 U.S.C. § 14071(c) (1994). By 2001, when the TDPS provision was enacted, federal law also required every state to establish procedures for registering sex offenders from other jurisdictions. *See* 42 U.S.C. § 14071(b)(7) (2001) (each state "shall include in its registration program residents who were convicted in another State and shall ensure that procedures are in place to accept registration information" from such individuals).[7]

Because of the close interaction between state and federal sex-offender laws, sex offenders are on notice of their duty to register in any jurisdiction where they reside. *See, e.g., United States v. Whaley,* 577 F.3d 254, 262 (5th Cir.2009) (actual notice of duty to register in one jurisdiction is sufficient, for due process purposes, to put sex offender on notice of duty to register with government generally). Appellant was convicted of first-degree child rape, first-degree statutory rape, and first-degree child molestation, and evidence presented at trial demonstrated that he knew he was required to register as a sex offender. The majority opinion's injection of an element not found within the criminal provision has the serious consequence of creating a loophole that allows this convicted child rapist to avoid his duty to register. This cannot be what the Legislature intended.

### b. Offenders Will Escape Prosecution Because TDPS List Will Never Be Complete

As noted by the court of appeals, if the State's ability to prosecute non-registration by extra-jurisdictional sex offenders is

---

7. Today, the federal government directly regulates sex offenders by requiring them to register in any jurisdiction where they reside and imposes a federal criminal penalty upon certain sex offenders who fail to register. *See* 42 U.S.C. § 16913(a); 18 U.S.C. § 2250(a).

contingent upon TDPS having made a substantial-similarity determination, then many sex offenders convicted in other jurisdictions will be able to avoid registration without fear of criminal prosecution. This is because TDPS will likely be unable to meet the Herculean burden of making preemptive substantial-similarity determinations for all eligible offenses. According to the U.S. State Department, there are 195 countries in the world.[8] Taking that number, plus 50 states in the United States, plus the federal government and the military code, TDPS must consider sex-offense laws from approximately 250 jurisdictions and make substantial-similarity determinations for all of them. Because there are few limits on the age of the conviction for which a defendant may be required to register, former versions of statutes would also require examination by TDPS. Furthermore, because Texas and foreign statutes are often amended, the process would be perpetual and would require constant monitoring of other jurisdictions' legislative enactments. It is exceedingly unlikely that TDPS could ever compile a complete list of all reportable offenses.

But the primary concern here is not the weight of the administrative burden on TDPS. The real concern is that TDPS would likely never satisfy this burden. This would result in many convicted sex offenders escaping prosecution for failure to register. This could not have been the intent of the Legislature in its efforts to protect the public from all convicted sex offenders, regardless of whether they are homegrown or convicted elsewhere. In contrast, reading the criminal provision exactly as it is written, without inserting the TDPS provision that does not expressly apply to it, best serves the Legislative intent to protect the public from all convicted sex offenders.

### 2. A Defendant's Right to Present Defense Is Negatively Impacted

Incorporation of the TDPS provision as an element of the criminal provision poses a threat to individuals' substantive and procedural due-process rights because a defendant could be subjected to criminal liability on the basis of a mere administrative determination. The majority opinion permits a criminal conviction upon the State's proof that an offense appears on a TDPS list without allowing a defendant the opportunity to challenge, in a criminal court with the benefit of appointed counsel for indigent defendants, the accuracy of that determination. The Legislature did not intend for TDPS's judgment to supplant the judgment of a court. This is apparent from the fact that the Legislature provided registrants with the opportunity to appeal TDPS administrative determinations to a Travis county district court. *See* Tex.Code Crim. Proc. art. 62.003(c). Thus, to hold that a TDPS determination conclusively proves or disproves an individual's duty to register is problematic in the criminal setting because criminal liability then, in effect, hinges on an administrative ruling that was never intended to be conclusive. This is a particular concern among criminal defendants recently released from prison, who are unlikely to have the funds to hire an attorney to challenge this administrative determination by TDPS in a Travis county district court. A defendant convicted under such a statutory scheme would likely have a valid due-process claim that he had been

8. Office of The Geographer and Global Issues, Bureau of Intelligence and Research, U.S. Department of State, Washington, D.C. (Jan. 3, 2012).

deprived of the opportunity to defend himself against the criminal accusation.[9]

The more reasonable understanding of the language of these provisions is that the TDPS provision describes the civil-regulatory function of TDPS in creating as complete a list as possible of foreign offenses that are substantially similar to Texas offenses, in order to assist law-enforcement agencies in registering sex offenders. If anyone desires to contest this determination, he may do so in a Travis county district court, and any determination by that court will only affect this TDPS list. Unlike the civil-administrative proceedings, a criminal prosecution should require that substantial similarity be determined by the court presiding over a defendant's trial.[10]

I would expressly hold that the administrative determination under the TDPS provision is an entirely different matter from the role of courts to decide criminal cases. *See Gregg v. Delhi–Taylor Oil Corp.*, 162 Tex. 26, 344 S.W.2d 411, 415 (1961) ("[w]here the issue is one inherently judicial in nature . . ., the courts are not ousted from jurisdiction unless the Legislature, by a valid statute, has explicitly granted exclusive jurisdiction to the administrative body").

There are two due-process concerns at issue in this decision.[11] One is the *Creekmore* situation, which addresses the procedural due-process question regarding registration requirements. The other is the due-process concern that a criminal defendant can be convicted of a criminal offense without having the opportunity to defend against the TDPS list in criminal court and without a criminal court making a matter-of-law determination. Both of these due-process concerns are best addressed by the approach set out in this dissenting opinion, which permits a defendant to challenge the TDPS list in civil district court and allows him to challenge the substantial-similarity determination in criminal district court. Because the majority opinion's holding satisfies only the first due-process concern, a defendant's due-process

9. Criminal defendants must be afforded a meaningful opportunity to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."); *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (fundamental fairness requires that a criminal defendant be afforded a "meaningful opportunity to present a complete defense").

10. "[W]here a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *United States v. Mendoza–Lopez*, 481 U.S. 828, 838, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) (holding that, when validity of prior deportation is element of a criminal offense in subsequent prosecution, defendant may collaterally challenge validity of prior deportation in pending criminal proceeding). The Supreme Court noted further that, "[e]ven with this safeguard, the use of the result of an administrative proceeding to establish an element of a criminal offense is troubling." *Id.* at 838 n. 15, 107 S.Ct. 2148.

11. I do not see any other due-process concerns. If, for example, someone did not register because he was never admonished that his particular conviction required him to register as a sex offender or because a law-enforcement agency refused his registration for any reason, then the State would be unable to prove criminal intent. Either the State or the defendant could challenge any determination by TDPS during the criminal proceedings. Conclusive evidence that the defendant did not knowingly or intentionally fail to register would render the evidence insufficient.

rights in a criminal trial are impeded by its holding.

### C. Object Sought to Be Attained is to Advance Public Safety

The stated legislative purpose behind Chapter 62 is to advance public-safety objectives. The program promotes public safety "by facilitating law enforcement's monitoring of sex offenders and by alerting members of the public who may be in an especially vulnerable situation to take appropriate precautions which could deter or prevent further crimes." *In re M.A.H.*, 20 S.W.3d 860, 863 (Tex.App.-Fort Worth 2000, no pet.). In particular, the Legislature was concerned about high recidivism rates for sex offenders, the unique threat sex offenders pose to public safety, a low incidence of rehabilitation, and sexual misconduct that frequently begins as a juvenile. *See* Senate Research Org., Bill Analysis, Tex. S.B. 259, 73rd Leg., R.S. (1991). Under the program, law-enforcement officers "monitor sex offenders living within their jurisdiction in order better to thwart repeat offenses." House Research Org., Bill Analysis, S.B. 259, 72nd Leg., R.S. (1991). This monitoring begins when a convicted sex offender seeks to register himself with the local law-enforcement agency. The program is effectively enforced by criminal penalties imposed on convicted sex offenders who fail to register as required. *See* TEX.CODE CRIM. PROC. art. 62.102(a).

The reading suggested by the majority opinion is contrary to the object sought to be attained by the sex-offender-registration program in that it inhibits sex-offender registrations by permitting sex offenders to move to Texas and not register unless and until TDPS makes a substantial-similarity determination. But in cases such as this one, in which an out-of-state sex offender moves to Texas and fails to inquire about his duty to register, Texas law enforcement will be unable to determine if such an individual has a reportable conviction because TDPS is unaware of his presence in the jurisdiction. The criminal provision is most reasonably read as placing the initial burden of inquiring about the duty to register on an out-of-state sex offender, and not on Texas law enforcement, which in many cases is unaware that such an individual has entered the State.

### III. Conclusion

The plain language of the criminal provision does not include any reference to TDPS. The TDPS provision's reference to TDPS's authority to determine substantial similarity must be examined under its intended context: TDPS's authority is exclusive as to the administration of the sex offender registration program. During the sex-offender registration process, only TDPS, and not the thousands of individual police officers from various law enforcement agencies, decides whether an out-of-state offense is substantially similar to an eligible Texas offense. But the sex-offender registration process is a distinct matter from the criminal prosecution for failure to register as a sex offender. It is absurd to conclude that the Legislature intended for sex offenders to escape criminal prosecution merely because TDPS had not yet placed their criminal offenses on a list, particularly when it is undisputed, as here, that the defendant knew about the requirement to register as a convicted sex offender, and that his conviction is one that is substantially similar to a reportable Texas offense. It is equally absurd to conclude that the Legislature intended for a defendant to lose his constitutional right to defend against a criminal accusation and for a civil administrative ruling to become binding in criminal court, particularly when there is no express language that makes the TDPS list applicable to the

criminal provision. Limiting the TDPS provision to the civil-regulatory context best protects a defendant's due-process rights and best fulfills the public safety purpose of the sex-offender registration program. I, therefore, would uphold the court of appeal's judgment affirming the trial court's judgment.

Rehearing denied.

COCHRAN, J., filed an opinion dissenting to the denial of the State's Motion for Rehearing in which JOHNSON and ALCALA, JJ., joined.

I would grant the State's Motion for Rehearing and affirm appellant's conviction for failing to comply with sex offender registration requirements based on critical trial testimony and statutes that the State has brought to our attention.[1] Appellant's Washington state parole officer testified that appellant had received both oral and written notification that, based on his first-degree rape-of-a-child conviction, he had a lifetime sex-offender registration requirement in Washington state and in "any county" to which he might move. Appellant was on notice that he was required to register as a sex offender in Washington and in Texas, but he failed to register in either state. He violated not only the Washington and Texas sex-offender registration laws, but the federal SORNA law as well.[2] Furthermore, under Article 62.052[3] a person may be required to register as a sex offender even when his out-of-state conviction is not "substantially similar" to a sex offense in Texas.[4] The "DPS determination" provision[5] is an administrative-proceeding statute that ensures a due-process forum and hearing for a person who contends that his out-of-state conviction is not "substantially similar" to a Texas sex-offender statute. A DPS determination of substantial similarity is neither a condition precedent to registration or prosecution, nor is it an element of any criminal offense under Chapter 62.

I.

Immediately before trial began in this case, the prosecutor gave the trial judge a copy of the Washington Supreme Court opinion upholding appellant's sentence for two 1988 sex crimes against children.[6] That opinion, of which we—as well as the trial judge—may take judicial notice, states that Crabtree was originally

---

1. The State's grounds for rehearing are as follows:

(1) The record contained an abundance of proof that Appellant's Washington conviction for Rape of a Child was substantially similar to the Texas offense of Aggravated Sexual Assault of a Child before the Court imposed a new element not listed in the statute criminalizing the failure to register as a sexual offender.

(2) The Court below correctly determined that Article 62.003(a) of the Code of Criminal Procedure does not impose a new element of proof in failure to register as a sexual offender offenses. The Legislative history of the articles establishing a duty to report and proscribing the failure to do so does not show that the intent of Art. 62.003 was to add a new element to the crime of failure to register as a sex offender.

2. See 18 U.S.C. § 2250(a) (setting out penalty for violating federal Sex Offender Registration and Notification Act of 42 U.S.C. § 16913).

3. TEX.CODE CRIM. PROC. art. 62.052.

4. The court of appeals noted that Article 62.052 "is not implicated in this case," but that is only because the State proceeded on the equally sound theory that applicant's Washington State conviction was a "reportable" one. See Crabtree v. State, No. 12–09–00322–CR, 2011 WL 1204332, at *7 n. 12 (Tex.App.-Tyler March 31, 2011) (not designated for publication).

5. TEX.CODE CRIM. PROC. art. 62.003.

6. In re Crabtree, 141 Wash.2d 577, 9 P.3d 814 (2000).

charged with five sexual assaults against children. On April 18, 1989, he entered guilty pleas to charges of first degree child rape (count II), first degree child molestation (count IV), and first degree statutory rape (count V) ... The court sentenced Crabtree to concurrent terms of 89 months (count II), 41 months (count IV), and 61 months (count V). A one-year term of community placement was imposed as part of his sentence for counts II and IV....[7]

The Washington Supreme Court noted that Crabtree admitted to sexually assaulting Jessica, age eight, and David, age seven, while he was babysitting them in August, 1988.[8] Also before trial, both the State and defense agreed to take judicial notice of the Washington rape-of-a-child statute which provides that a person is guilty of a Class A felony "when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim."[9]

At trial, Detective Noel Martin with Smith County Sheriff's Office testified that appellant was the person whose fingerprints matched the fingerprints on the Washington state judgment of Mark Crabtree. Det. Martin explained the various pages of appellant's Washington certified penitentiary packet, including the 1989 "Order of Release and/or Transfer to Community Custody." That document set out the numerous sex-offender provisions, including the requirement to enter sexual deviancy treatment, "no-contact with children" and "no contact with the victims" without therapist permission provisions, as well as a requirement of approval of his residence by the community corrections officer. Appellant signed the order and initialed the box stating, "I have read or have had read to me the 'Registration Notification' and the foregoing conditions and requirements. Each of these conditions/requirements have been explained to me and I hereby agree to comply with them." On the certified judgment itself, appellant had initialed the box stating, "I have been registered with the Department of Corrections and informed of the registration requirements with my county of residence. I have signed and received a copy of the DOC Registration/Notification, DOC 05–444A."

The Washington pen packet also contains a copy of the information. Count II, the rape-of-a-child offense, read, in pertinent part, "That the defendant Mark Alan Crabtree, in King County, Washington, during a period of time intervening between June 1, 1988, and August 31, 1988, being at least 24 months older than Jessica _____, had sexual intercourse with Jessica _____, who was less than 12 years old and was not married to Mark Alan Crabtree."[10] Appellant was, at the time, twenty-six years old.

Det. Martin testified that, if someone who is twenty-six has sexual intercourse with somebody who's less than 12 years old and not married to that person, that

---

7. *Id.* at 816.

8. *Id.* at 819; State's Exhibit 2.

9. Rev.Code Wash. § 9A.44.073; *see State v. Bishop,* 63 Wash.App. 15, 816 P.2d 738, 742 (1991) (under rape-of-a-child statute, "the State must prove that the defendant penetrated, at a minimum, the lips of the victim's sexual organs.").

10. Count IV of the Washington information, to which appellant also pled guilty, stated that Mark Alan Crabtree, "being at least 36 months older than David _____ had sexual contact with David _____ (by directing Jessica _____'s hand) who was less than 12 years old and was not married to Mark Alan Crabtree."

would be the offense of aggravated sexual assault of a child under Texas law—a first degree felony offense. And that offense is "substantially similar" to the Washington rape-of-a-child offense.

Officer Jeri Lynn Scott testified that she is in the sex-offender registration department of the sheriff's office. She said that she determined that the crime of first degree rape of a child in Washington is substantially similar to aggravated sexual assault of a child in Texas based on the title of the offense, "Rape of a Child" and because appellant's Washington criminal judgment records "said he was a registered sex offender nonexpiring." Officer Scott was "confident" that the Washington sex offenses were substantially similar to the Texas sex offenses of aggravated sexual assault and indecency with a child. Therefore, appellant was required to register as a sex offender for life because first-degree rape of a child is a sexually violent offense. Because appellant was also convicted of a second sex offense, he was required to register on a quarterly basis. Officer Scott testified that if she's unsure as to whether out-of-state statutes are substantially similar to Texas offenses, she can contact DPS because DPS makes the final determination on whatever the registration requirements are.

Jefferson Overholser, a Washington parole officer, testified that he supervised appellant in Washington and advised him of the need to register as a sex offender. Mr. Overholser said that appellant was required to certify that he had received a written copy of the DOC sex offender notification requirements and that he did so.[11] Mr. Overholser tells his parolees of the need to register with the sheriff's department in whatever county they reside. But appellant did not register even though Mr. Overholser personally informed him that he was required to do so at a community correction hearing in 2000 after appellant was arrested for noncompliance. State's Exhibit 3 is the DOC 05–444 form that appellant, in the Washington certified judgment, initialed having received a copy of. That form explains the registration and reporting requirements, including the following: "If you move to a new county, you must register in person with the sheriff of the new county within ten (10) days. You must also send a written notice to the sheriff in the county you moved from within the same ten (10) day period."[12] The form ends with the following advisory, written in all capital letters:

Remember, it is a new criminal offense for you to fail to register unless you are relieved of the registration requirement as described above. It is your responsibility to understand and obey this law.

When officers went to arrest appellant for failure to register as a sex offender, appellant said, "I've been expecting it."

The jury instructions in this case contained the following application paragraph:

Now if you find from the evidence beyond a reasonable doubt that on or about the 12th day of January, 2009, in Smith County, Texas, the defendant, Mark Crabtree, did then and there, while being a person required to register with the local law enforcement authority in the county where the Defendant resided or intended to reside for more than seven days, to-wit, Smith

11. Mr. Overholser said that rape of a child is a Class A felony in Washington and requires lifetime registration.

12. Appellant's sister told Officer Scott that appellant moved to Smith County in about

2002. Thus, the evidence showed that appellant ignored his legal duty to register in Washington State in 2000, and ignored his duty, under both Washington and Texas law, to register when he moved to Smith County.

County, Texas, because of a reportable conviction for Rape of a Child in the First Degree, intentionally or knowingly failed to register with the local law enforcement authority in said county, then you will find the Defendant guilty of Failure to Register as a Sex Offender as charged in the indictment.[13]

The prosecutor's closing focused on common sense:

So the only question is, what evidence have you heard in trial, and what does the indictment require us to prove, okay? ... And what is that? "While being a person required to register with local law enforcement in the county where the defendant resided or intended to reside for more than seven days because of a reportable conviction for rape of a child in the first degree, intentionally or knowingly failed to register with local law enforcement in that county." That's it, all we have to prove.... There's not some little something you're missing. That's it. That's common sense, That's the law.... You don't get

much more similar to aggravated sexual assault of a child than intercourse with a child under 12.... Mr. Perkins says there's not penetration in there. Well, it's intercourse. Give me a break. So those are similar.

The jury found appellant guilty of failing to register and sentenced him to eighteen years' imprisonment and a $10,000 fine.

On appeal, appellant argued that the evidence was legally insufficient to support his conviction because the State failed to show that, under Article 62.003(a),[14] the Department of Public Safety (DPS) had determined that the Washington statute was substantially similar to a Texas offense for purposes of Chapter 62. The court of appeals disagreed with appellant's reading of the statute—a reading that would require DPS to survey every past and present law from every domestic and foreign jurisdiction.[15] The court of appeals explained,

If the legislature wished to define out of state convictions as the same or substantially similar to certain offenses only if

13. The trial judge had already taken judicial notice of the Washington rape-of-a-child statute and determined, as a matter of law, that the Washington Class A felony was "substantially similar" to the Texas statute of aggravated sexual assault of a child under Tex. Penal Code § 22.021(a)(1)(b). This is not a fact question for the jury, but a legal question for the judge.

14. Article 62.003, the "DPS determination" statute provides the following:
 (a) For the purposes of this chapter, the department [of public safety] is responsible for determining whether an offense under the laws of another state, federal law, the laws of a foreign country, or the Uniform Code of Military Justice contains elements that are substantially similar to the elements of an offense under the laws of this state.
 (b) The department annually shall provide or make available to each prosecuting attorney's office in this state:

 (1) the criteria used in making a determination under Subsection (a); and
 (2) any existing record or compilation of offenses under the laws of another state, federal law, the laws of a foreign country, and the Uniform Code of Military Justice that the department has already determined to contain elements that are substantially similar to the elements of offenses under the laws of this state.
 (c) An appeal of a determination made under this article shall be brought in a district court in Travis County.
 TEX.CODE CRIM. PROC. art. 62.03.

15. *Crabtree v. State*, No. 12–09–00322–CR, 2011 WL 1204332, at *7 (Tex.App.-Tyler March 31, 2011) (not designated for publication) (noting the enormity of the duty of DPS to survey every law, past and present, from every U.S. and foreign jurisdiction under appellant's interpretation of the statute).

the Department had made such a determination, it would have defined substantially similar offenses in that way. Instead, the legislature defined reportable and sexually violent offenses as specific Texas offenses and offenses under the laws of other jurisdictions without regard to a vetting or verification process by the Department.[16]

Because the records of appellant's prior Washington convictions showed that he had committed rape of a child and child molestation and those records set out the elements of the Washington offense, the court of appeals found that the evidence was sufficient to prove that the elements of those offenses were substantially similar to the elements of a Texas sex offense for which lifetime reporting every ninety days was required.[17]

## II.

Any analysis of the Texas sex-offender registration and notification statutes should begin with a short discussion of the development of the national sex-offender statutes.

### A. The Federal Statutory Scheme.

California was the first state to enact a sex-offender registration statute in 1947, and in 1990, Washington was the first state to enact a sex-offender community notification statute.[18] "The idea was politically popular, and by 1993, twenty-four states, including Texas, enacted various versions of such statutes."[19] Congress got into the act, and in 1994, it passed the Jacob Wetterling Act with the intent "to prod all states to enact similar sex offender registration and community notification laws and to provide for a national registration system to handle offenders who move from one State to another."[20] The Act required states to ensure that their prison authorities informed a person who has been (a) convicted of a sex crime against a minor, (b) convicted of a "sexually violent offense," or (c) determined to be a "sexually violent predator" of his duty to register with local authorities wherever he moves before being released from custody.[21] The Act also specified minimum registration requirements for offenders and required states to criminalize the failure of sex offenders to register with local authorities.[22]

It has been noted that the "primary thrust" of the Wetterling Act "was to browbeat individual states into enacting and enforcing local sex offender registration laws by threatening to withhold federal highway funds, [but] the role of federal agencies has since expanded."[23] A helpful discussion of the early history of the rele-

---

16. *Id.*

17. *Id.* at *9.

18. *See Creekmore v. Att'y General of Texas,* 116 F.Supp.2d 767, 770–71 (E.D.Tex.2000).

19. *Id.* at 771 (internal citation omitted). Texas originally enacted its program in 1991 and has expanded and amended it in almost every legislative session since then. *See Creekmore v. Att'y General of Texas,* 341 F.Supp.2d 648, 654 (E.D.Tex.2004) (noting biennial legislative enactments during the 1990s).

20. *Creekmore,* 116 F.Supp.2d at 771.

21. *See* Wetterling Act at § 170101(a)(1)(A)–(B) & § 170101(b)(1); *see Creekmore,* 116 F.Supp.2d at 771.

22. *See* Wetterling Act at § 170101(b)(3)(A)–(B) & § 170101(C); *see Creekmore,* 116 F.Supp.2d at 771.

23. *Creekmore v. Att'y General of Texas,* 138 F.Supp.2d 795, 798 n. 4 (E.D.Tex.2001). The federal act mandated that ten percent of a state's highway funds would be lost if that state failed to implement a federally-approved program for sex offender registration and notification. *See Creekmore,* 116 F.Supp.2d at 772.

852

vant federal statutes may be found in the first of three federal opinions dealing with the Texas sex-offender registration requirement and the genesis of the "DPS determination" statute in the *Creekmore v. Attorney General of Texas* litigation.[24]

The 1996 Lychner Act added a new section to the federal law that required the Attorney General to establish a national database to track the whereabouts and movements of offenders who were subject to registration under the various federally-approved state statutes.[25] If a state had not enacted federally approved sex-offender programs, offenders were required to register directly with the FBI.[26] As President Clinton warned in signing the legislation that enacted the national sex-offender registry: "If you dare prey on our children, the law will follow you wherever you go—state to state, town to town." [27]

Under the most recent federal Sex Offender Registration and Notification Act

(SORNA),[28] those who have been convicted of certain sex crimes in any state or federal jurisdiction are required to provide local authorities—in whatever state they reside in—with their names and other identifiers for inclusion in updated state and federal sex offender registries.[29] Under SORNA, the failure to register with the appropriate state authorities when one travels to a different state is a federal offense as well as a state offense.[30]

In sum, the federal SORNA program places great emphasis on having all sex offenders from every jurisdiction in the United States register in whatever local community they live, and that their names, addresses, and other identifiers are contained within the national FBI registry, subject to constant updating and monitoring so that such offenders cannot avoid law enforcement oversight by slipping from one state to another in search of a "clean slate." [31]

24. *See* 116 F.Supp.2d at 770–73.

25. *See id.* at 772.

26. *Id.*

27. Wayne Logan, *Horizontal Federalism in an Age of Interconnectedness*, 154 U.PA.L.REV. 257, 261 (2005) (quoting Ron Fournier, *Clinton Signs Law on Sex Offenders*, CHI. SUN-TIMES, May 18, 1996, at 12).

28. 120 Stat. 590, 42 U.S.C. § 16901, *et seq.* (2006 ed.).

29. *Id.* §§ 16912(a), 16913–16914, 16919(a) (2006 ed.); *see generally Reynolds v. United States*, —— U.S. ——, ——, 132 S.Ct. 975, 978, 181 L.Ed.2d 935 (2012) (describing SORNA and its requirements). According to the Court in *Reynolds*,

> The new federal Act reflects Congress' awareness that pre-Act registration law consisted of a patchwork of federal and 50 individual state registration systems. The Act seeks to make those systems more uniform and effective. It does so by repealing several earlier federal laws that also (but less effectively) sought uniformity; by set-

ting forth comprehensive registration-system standards; by making federal funding contingent on States' bringing their systems into compliance with those standards; by requiring both state and federal sex offenders to register with relevant jurisdictions (and to keep registration information current); and by creating federal criminal sanctions applicable to those who violate the Act's registration requirements.

*Id.* (internal citations omitted). The Attorney General made the federal registration requirements retroactive and applicable to all sex offenders "convicted of the offense for which registration is required prior to the enactment" of SORNA on February 28, 2007. *Id.* at 979.

30. 18 U.S.C. § 2250(a); *see Reynolds*, 132 S.Ct. at 978.

31. *See* Wayne Logan, *Horizontal Federalism*, supra note 27, at 260; *see also Reynolds*, 132 S.Ct. at 982–83 (quoting supporters of SORNA to the effect that "[t]here currently are over 100,000 sex offenders in this country who are required to register but are 'off the system.' They are not registered. The penal-

## B. The Texas Statutory Scheme.

Texas enacted its first sex-offender registration and notification statutes in 1991 [32] and has regularly amended them to ensure that the program meets minimum federal requirements.[33] They are now codified in Chapter 62 of the Code of Criminal Procedure. Under the 1991 law, a person who had been convicted in Texas of aggravated sexual assault, sexual assault, incest, indecency with a child, or had been convicted four times of indecent exposure had a reportable offense and was required to register with the local law enforcement authorities.[34] Penal authorities were required to notify a sex offender of his duty to register at least thirty days before the offender was released from prison.[35] It was a Class A misdemeanor for a person to fail to comply with that registration requirement.[36]

In 1995, the statute was amended to require registration under the Act for those who had been convicted out of state "for an offense containing elements that are substantially similar to the elements" of those Texas offenses for which sex-offender registration was required.[37] After 1995, trial and appellate courts decided, as a matter of law, whether the out-of-state conviction was "substantially similar" to the analogous Texas sex offense.[38] Courts have regularly taken judicial notice concerning the "substantial similarity" between statutes as a question of law for the court, not a question of fact for the jury.[39]

The various states have taken different approaches in complying with SORNA and its out-of-state sex-offender registration requirements. The "internal approach" requires that out-of-state convictions satisfy the eligibility requirements of the forum state's registration law.[40] Thus, the out-of-state conviction must be "reasonably" or "substantially" the same or "similar to" a registerable offense in the forum.[41] Under the "external approach," the forum state

---

ties in this bill should be adequate to ensure that these individuals register")[.]

32. *See* the Texas Sex Offender Registration Program, Act effective Sept. 1, 1991, 72d Leg., R.S., ch. 572, § 1, 1991 Texas Sess. Law Serv. 2029–32. That law was Article 6252–13c.1, sec. 7, of the Texas Revised Statutes.

33. *Creekmore*, 341 F.Supp.2d at 654.

34. TEX. CIV. STAT. art. 6252–13c.1, § 1, 2.

35. *Id.* § 3. If the person had not been sent to prison, then the trial judge was required to provide the sex offender with notification of the registration requirement at the time he pronounced sentence. *Id.*

36. *Id.* § 7.

37. *See* Acts 1995, 74th Leg., R.S., ch. 258, § 1, 2 (amending Art. 6252–13c.1, § 1, by adding subsections (I) and (J)). By that time, the list of sex offenses for which registration was required had grown considerably. *See id.* §§ (A)–(D), (F).

38. *See Ex parte Warren*, 353 S.W.3d 490, 496 (Tex.Crim.App.2011); *Prudholm v. State*, 333 S.W.3d 590, 596–600 (Tex.Crim.App.2011); *Ex parte White*, 211 S.W.3d 316, 318 (Tex. Crim.App.2007); *Hardy v. State*, 187 S.W.3d 232, 236 (Tex.App.-Texarkana 2006, pet. ref'd).

39. *See Hardy*, 187 S.W.3d at 236 ("Statutory interpretation is a question of law to be determined by the trial court, not the jury" in deciding whether an out-of-state sexual offense is "substantially similar" to a Texas offense; *see also Rodriquez v. State*, 227 S.W.3d 842, 845 (Tex.App.-Amarillo 2007, no pet.) (determining whether defendant's prior out-of-state conviction was "substantially similar" to the Texas offense of aggravated sexual assault was a question of law involving the interpretation of statutes and is not submitted to a jury for resolution).

40. *See* Wayne Logan, *Horizontal Federalism*, supra note 27, at 261.

41. *Id.*

gives deference to the legal determination of the convicting state.[42] Thus, if the convicting state considers the offense one that is subject to sex-offender registration, then the forum state will do so also. The Texas sex-offender registration program takes both an internal and external approach to out-of-state convictions.

Under Article 62.001(5)(H), a "reportable conviction" may be "a violation of the laws of another state, federal law, the laws of a foreign country, or the Uniform Code of Military Justice for or based on the violation of an offense containing elements that are substantially similar to the elements of" an enumerated Texas sex offense.[43] Under that statute, Texas, like 35 other states, has taken an "internal approach" by comparing the elements of its sex offenses to the elements of the extrajurisdictional conviction.[44] If those elements are substantially similar, then the offender is subject to the requirements of Chapter 62, the Texas Sex Offender Registration Program.

But suppose that the elements of the out-of-state conviction are *not* substantially similar to the elements of a Texas sex offense. Perhaps they share nothing in common. A person with such a conviction may still be subject to the registration requirements of Chapter 62 under the "external approach" of Article 62.052.[45] Under this statute, the Texas Department of Public Safety and another jurisdiction may enter into a reciprocal registration agreement that requires the out-of-state sex offender to register in Texas (and a Texas sex offender to register in that jurisdiction) to prevent offenders "from frustrating the public purpose of the registration of sex offenders by moving from one state to another." [46] Thus, Texas, like sixteen other states,[47] will defer to the convicting state and require such offenders to register in Texas for the time period prescribed by the convicting state's registration scheme. This statute, like those of the other "external approach" states, is consistent with Congress's and the Texas Legislature's intent to expand the scope of registration coverage for out-of-state sex offenders and ensure that all sex offenders will be registered and monitored if they move from state to state or town to town.

By enacting a comprehensive internal and external approach toward out-of-state sex-offender registration requirements, the Texas Legislature has pursued its "public purpose of the registration of sex offenders" to ensure that this state does not

42. *Id.*

43. Tex.Code Crim. Proc. Art. 62.001(5)(H).

44. Wayne Logan, *Horizontal Federalism*, supra note 27, at 261.

45. Tex.Code Crim. Proc. Art. 62.052 ("Registration: Extrajurisdictional Registrants"). That provision reads as follows:

 (a) An extrajurisdictional registrant is required to comply with the annual verification requirements of Article 62.058 in the same manner as a person who is required to verify registration on the basis of a reportable conviction or adjudication.
 (b) The duty to register for an extrajurisdictional registrant expires on the date the person's duty to register would expire under the laws of the other state or foreign country had the person remained in that state or foreign country, under federal law, or under the Uniform Code of Military Justice, as applicable.
 (c) The department may negotiate and enter into a reciprocal registration agreement with any other state to prevent residents of this state and residents of the other state from frustrating the public purpose of the registration of sex offenders by moving from one state to the other.

46. *Id.* art. 62.052(c).

47. Wayne Logan, *Horizontal Federalism*, supra note 27, at 287.

become a haven those who would frustrate that purpose "by moving from one state to another." [48]

## C. Article 62.003. Determination Regarding Substantially Similar Elements of Offense.

In 2001, six years after it had amended the sex-offender registration statute to include mandatory registration for out-of-state sex offenses that were substantially similar to Texas sex offenses, the Legislature enacted Article 62.003, the "DPS Determination" statute, in explicit reaction [49] to the long-lasting *Creekmore* litigation. That new statute was enacted to ensure that a person with an out-of-state conviction had an administrative and judicial forum in which to challenge an assertion by local law enforcement that he had a reportable sex-offense conviction and was, therefore, required to register under Chapter 62. But that administrative statute has nothing to do with the definition of a "failure to register" offense, and a DPS determination of substantial similarity is not an element of any criminal offense.

The *Creekmore* litigation centered around Meredith Creekmore, who was convicted of sex offenses under the Uniform Code of Military Justice (UCMJ) for sexually abusing his daughter when she was two to four years of age. [50] He was sentenced to six years' imprisonment. When he was released from prison, the Bureau of Prisons (BOP) notified him that he was required to register in Texas as a sex offender. [51] BOP also notified the Sheriff of Jefferson County, the Attorney General of Texas, and the Beaumont Chief of Police of Creekmore's release and of his mandatory duty to register every ninety days for the rest of his life. [52] Creekmore registered, under protest, as a sex offender and then filed a civil lawsuit, arguing that the Texas Program was infirm because, *inter alia*, "it does not indicate who determines whether an offense under UCMJ is substantially similar to a listed offense under the Texas Penal Code" and "it does not provide any process by which an individual determined to have a reportable conviction may challenge that determination[.]" [53] In other words, Creekmore claimed that his federal due-process rights were violated because he did not have any legal way by which to challenge the Beaumont police chief's notification that he was required to register as a sex offender. [54]

---

48. Tex.Code Crim. Proc. art. 62.052(c).

49. The House Research Organization Bill analysis to HB 2113, which added Article 62.003 to the Sex Offender Registration Program, notes that supporters of the bill state, CSHB 2113 would clarify current language requiring registration for persons who committed sex offenses in other states or who violated federal or military law. It would make clear who decides whether an offense from another jurisdiction would trigger Texas registration requirements and would allow appeals of these decisions. These changes are necessary to address concerns about the Texas law that were raised in a lawsuit against the Beaumont Police Department.
 Opponents of the bill argued that
 DPS may not be the proper entity to decide whether an offense from another jurisdiction would trigger Texas registration requirements. It is unclear whether an offender would go directly to DPS for a decision or whether this would be the responsibility of a local law enforcement agency. CSHB 2113 should require that the decision maker be trained and competent to make the decision.

50. 341 F.Supp.2d at 651–52.

51. 116 F.Supp.2d at 769.

52. *Id.*

53. *Id.*

54. The federal district judge noted, in granting Creekmore prospective relief by preventing the Beaumont authorities from "continu-

That's the problem that Article 62.003 solved.[55]

The federal district judge noted in his final opinion that the Texas Legislature had solved the legitimate question that Creekmore raised by amending two statutes:

(1) "Article 62.0101 [now 62.003], enacted in 2001, delegates to the TDPS the responsibility for determining whether a UCMJ offense contains elements substantially similar to elements of a Texas offense"; and

(2) "Article 62.021 [now 62.052], amended in 2001 and 2003, now requires

that any person required to register as a sex offender *under federal law or the Uniform Code of Military Justice* must register in Texas if not otherwise required to register under TSORP." [56]

Thus, the Texas Legislature, motivated in part by the insistent prodding of Congress to ensure that sex offenders convicted in one state cannot travel to another state to obtain a "clean slate," [57] enacted one statute to ensure that a person convicted of an out-of-state sex offense had a judicial forum in which to challenge the applicability

---

ing to subject Creekmore to registration and public dissemination of information" until he has been given the "basic procedural safeguards of notice, opportunity to b hear, and appellate review" of the determination that he had a "reportable conviction" under Texas law. 341 F.Supp.2d at 671.

**55.** That problem has, however, been solved under SORNA for anyone who, like Creekmore or appellant, was informed that he was required to register as a sex offender before moving from the convicting jurisdiction. Article 62.003 still serves a useful purpose, however, for those who are not required to register in their convicting state or who were convicted and moved to Texas before the convicting state required sex-offender registration.

**56.** *Creekmore*, 341 F.Supp.2d at 655. Former article 62.021 ("Out–of–State Registrants"), read,

(a) This article applies to a person who:
(1) is required to register as a sex offender under:
(A) the laws of another state with which the department has entered into a reciprocal registration agreement;
(B) federal law or the Uniform Code of Military Justice; or
(C) the laws of a foreign country; and
(2) is not otherwise required to register under this chapter because:
(A) the person does not have a reportable conviction for an offense under the laws of the other state, federal law, the laws of the foreign country, or the Uniform Code

of Military Justice containing elements that are substantially similar to an offense requiring registration under this chapter; or
(B) the person does not have a reportable adjudication of delinquent conduct based on a violation of an offense under the laws of the other state, federal law, or the laws of the foreign country containing elements that are substantially similar to an offense requiring registration under this chapter.
(b) A person described by Subsection (a) is required to comply with the annual verification requirements of Article 62.06 in the same manner as a person who is required to verify registration on the basis of a reportable conviction or adjudication.
(c) The duty to register for a person described by Subsection (a) expires on the date the person's duty to register would expire under the laws of the other state or foreign country had the person remained in that state or foreign country, under federal law, or under the Uniform Code of Military Justice, as applicable.
(d) The department may negotiate and enter into a reciprocal registration agreement with any other state to prevent residents of this state and residents of the other state from frustrating the public purpose of the registration of sex offenders by moving from one state to the other.

That statute is now art. 62.052, although its definition portion was moved to art. 62.001(10).

**57.** *See id.* subsection (d).

of Chapter 62 to his prior conviction and enacted a separate statutory mechanism for extra-jurisdictional sex-offender registration. Therefore, even if the elements of the out-of-state offense are not substantially similar to the elements of a Texas sex offense, registration under Chapter 62 may be required if registration is required under federal law, foreign law, or another state's law when Texas has a reciprocal registration agreement with that state.[58]

Thus, because Creekmore was required to register as a sex offender under the UCMJ (and he had been informed of that federal-law requirement by the BOP before his release from prison) and Article 62.021 [now 62.052], requires Texas registration if it is required under the UCMJ, it would make no difference whether the elements of the UCMJ for which Creekmore was convicted are similar to those of an offense under Texas law.[59]

In sum, a convicted sex offender who moves to Texas will be required to register in Texas if (a) the elements of the prior offense are "substantially similar" to those of a reportable Texas sex offense *or* (b) the person is required to register as a sex offender under the UCMJ or federal or foreign law, or the laws of another state with which Texas has a reciprocal registration agreement.[60]

Due process is satisfied under option (a) because a person whom local law enforcement has ordered to register may seek a determination from DPS that the elements of his out-of-state conviction are not "substantially similar" to the elements of an analogous Texas sex offense.[61] And, if unsatisfied, he may file a civil lawsuit in Travis County for judicial review of the DPS determination.[62] This administrative system has been successfully employed by at least two plaintiffs challenging the registerability of their out-of-state sex convictions.[63] In each case, the plaintiff had a

---

58. *See id.* subsection (a).

59. *See Creekmore*, 341 F.Supp.2d at 670–71. The federal district judge concluded that granting Creekmore temporary injunction relief

> will not preclude law enforcement officials from subjecting Creekmore to registration . . . upon providing the process now afforded under Article 62.0101. It will not preclude state officials from requiring Creekmore to register under any other alternative provision of TSORP, including Article 62.021, which may apply in their considered judgment.

*Id.* (footnote omitted).

60. The Third Court of Appeals recently noted and distinguished these two different statutory methods—a "substantially similar" reportable offense under Article 62.001(5)(H) or as an "extraterritorial registrant" under Art. 62.001(10)—by which a person with an out-of-state conviction may be required to register as a sex offender under Chapter 62. *Tex. Dept. of Public Safety v. Anonymous Adult Tex. Resident*, 382 S.W.3d 531, 534 n. 2 (Tex.App.-Austin 2012, n.p.h.).

61. The DPS determination statute is not designed to give out-of-state offenders direct, public notice because DPS is not required to publicly disseminate its determinations of "substantial similarity." It is required only to annually notify "each prosecuting attorney's office" of the criteria that it uses in making determinations and of its existing record of previous determinations of "substantial similarity." Tᴇx.Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. art. 62.003(b).

62. Or, if DPS determines that the out-of-state sex conviction is not "substantially similar" to a Texas one, the local law enforcement authority may file an appeal in Travis County. Tᴇx.Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. Art. 62.003(c).

63. *Tex. Dept. of Public Safety v. Garcia*, 327 S.W.3d 898 (Tex.App.-Austin 2010, pet. denied) (alleged sex offender's Oregon conviction for having contributed to the sexual delinquency of a minor did not contain elements substantially similar to the Texas Penal Code offense of sexual assault; plaintiff's conviction was not a reportable or registerable offense under Chapter 62); *Anonymous Adult*, 382 S.W.3d at 539 (elements of person's convictions for indecent assault and battery were

prior out-of-state conviction that DPS had administratively determined was "substantially similar" to a reportable offense under Texas law.[64] In each case, the plaintiff filed suit in a Travis County district court under Article 62.003(c).[65] Both plaintiffs prevailed at the trial court level with the judge finding, as a matter of law in each case, that the out-of-state offenses were not substantially similar to Texas offenses for purposes of sex-offender registration under Chapter 62.[66] In each case, DPS appealed to the Third Court of Appeals and again lost.[67] This civil administrative system has worked exactly as intended in providing a forum for deciding whether a person has a "reportable" out-of-state sex-offense conviction. The statute says nothing, however, about a person who is required to register under SORNA or under the extra-jurisdictional statute. For them due process is provided in a different manner.

Due process is satisfied under option (b), the external authority of SORNA and the extra-jurisdictional statute, because a person whom local law enforcement has ordered to register in Texas was already required to register as a sex offender in the jurisdiction in which he was originally convicted. His due-process rights were satisfied by notification of the registration requirement in that convicting jurisdiction, and his duty to register and the duration of that duty is determined by the law of the convicting jurisdiction.[68] Under Article 62.052, Texas is doing nothing more than enforcing the registration mandate of the convicting jurisdiction and preventing the sex offender "from frustrating the public purpose of the registration of sex offenders by moving from one state to another."[69] Furthermore, federal law requires a person who has been convicted of a registerable sex offense in one state— such as a person who has been convicted of rape of a child in Washington—to register with local law enforcement if he moves in interstate commerce to Texas.[70] Article

---

not "substantially similar" to Texas offense of sexual assault; plaintiff's conviction was not a reportable offense under Chapter 62).

**64.** *Garcia*, 327 S.W.3d at 901; *Anonymous Adult*, 382 S.W.3d at 532.

**65.** *Id.* The plaintiff in *Anonymous Adult* first registered under Chapter 62 and then filed suit.

**66.** *Garcia*, 327 S.W.3d at 901; *Anonymous Adult*, 382 S.W.3d at 532.

**67.** *Garcia*, 327 S.W.3d at 906–07; *Anonymous Adult*, 382 S.W.3d at 539. It was significant to the *Garcia* court that DPS had not shown that the plaintiff was required to register as a sex offender in Oregon, noting,

> Had Garcia shown a the hearing that he was not required to register in Oregon, the Department's determination would create the anomalous situation in which a defendant was required to register in Texas for a conviction that was neither registerable in Oregon nor an "offense" here[.]

*Id.* at 903 n. 1. Thus, if a person can show that his conviction did not require sex-offender registration in the original jurisdiction, then he need not register in Texas unless the elements of the out-of-state offense are "substantially similar" to a reportable offense in Texas. And the person may file a civil lawsuit in Travis County disputing any such determination.

**68.** Tex.Code Crim Proc. art. 62.052(b).

**69.** *Id.* art. 62.052(c).

**70.** *See United States v. Whaley*, 577 F.3d 254, 256 (5th Cir.2009) (defendant, who was convicted in Kansas of aggravated sexual battery and required to register as a sex offender under Kansas law upon release from prison, was required to register with local law enforcement when he moved to Texas; when he failed to register in Texas he violated 18 U.S.C. § 2250(a) by traveling in interstate commerce and knowingly failing to register and update his registration as required under SORNA).

62.052 requires all extra-jurisdictional registrants who are required by federal law (SORNA) to register in Texas to do so even if the elements of their out-of-state offenses are not "substantially similar" to an analogous Texas offense.

## III.

In this case, appellant argues that the evidence to prove the offense of failing to register as a sex offender under Chapter 62 was legally insufficient because the State did not prove that DPS had made a prior determination that the elements of rape of a child under Washington law are "substantially similar" to the elements of aggravated sexual assault of a child under Texas law.[71] He argues that a DPS determination is an essential element because it "ensures that sex offender registration is applied across Texas in a standardized manner that prevents discrimination, an arbitrary application of the law, and disparate results for similarly situated defendants."

But if appellant did not believe that he was supposed to register as a sex offender, he could have complained to the Washington authorities when he was originally ordered to register with local law enforcement in that state after he was released from prison in 1998.

Appellant cannot claim that he did not receive due-process notification of his lifetime obligation to register as a sex offender regardless of where in the United States he resides. The testimonial and documentary evidence in this case shows that he was repeatedly warned by Washington authorities of his lifetime obligation to register every ninety days with local law enforcement in whatever county he lived. He did not need to guess about whether or not the law required him to register as a sex offender. That requirement included a county in Texas as well as a county in Washington. Thus, all sex offenders who are convicted of rape of a child in Washington and told that they are required to register as sex-offenders for their lifetime and who then move to Texas will be treated in a "standardized manner that prevents discrimination, an arbitrary application of the law, and disparate results for similarly situated defendants."

In this case, the trial judge properly took judicial notice of the Washington statute for rape of a child, the Texas statute of aggravated sexual assault of a child, the Washington Supreme Court decision concerning appellant's conviction, appellant's Washington judgment and his signature attesting that he had been fully admonished of his lifetime sex-offender registration requirement in whatever county he lived. Although it was unnecessary given appellant's duty to register under Article 62.052, neither the trial judge nor the court of appeals erred in concluding, as a matter of law, that the elements of the Washington rape-of-a-child offense are "substantially similar" to the elements of the Texas offense of aggravated sexual assault of a child. I therefore respectfully dissent to the Court's failure to grant the State's Motion for Rehearing.[72]

**71.** The State argues that DPS had made such a determination and had sent a letter noting that determination addressed to Texas Law Enforcement Agencies on September 4, 2009, a few days before appellant's trial commenced, but that letter was not introduced as a court's exhibit and the trial judge did not take judicial notice of it at the time of trial. It is only in its Motion for Rehearing that the State attaches a copy of the letter, and therefore I will not consider that letter as proof of the fact it asserts.

**72.** On original submission, the majority stated that the Texas Legislature should amend Arti-

cle 62.003 if it disagreed with the Court's interpretation of that statute. *Crabtree v. State*, 389 S.W.3d 820, 830–32, 2012 WL 5348220, *8 (Tex.Crim.App. October 31, 2012). To ensure that Texas remains in compliance with SORNA and does not jeopardize any of its federal highway funds, the Legislature could easily amend Article 62.003 by *adding a new subsection (d):*

(d) This article is intended only for purposes of an administrative proceeding. A determination by the department is not a condition precedent to an offender's registration requirement nor is it an element of any criminal offense.